OSCAR GUENSCH, RESPONDENT, v. THE TRUSTEES OF THE THIRD PRESBYTERIAN CONGREGATION IN NEWARK AND P. DeNICHOLAS, INCORPORATED, APPELLANTS.

Submitted February 23, 1932—Decided May 16, 1932.

For the trustees of the Third Presbyterian Congregation in Newark, *Charles Stockdell Gray.*

For P. DeNicholas, Incorporated, *Cohen & Klein.*

For the respondent, *Harley, Cox & Walburg (John J. Francis,* of counsel).

The opinion of the court was delivered by

BODINE, J.  Oscar Guensch, the plaintiff, recovered a verdict of $17,000 for personal injuries sustained January 10th, 1929, at Nos. 913-915 Broad street, Newark.  The property was owned by the trustees of the Third Presbyterian Congregation, who had leased part of the premises occupied by the Rialto Restaurant to the Southern Candy Company, who sublet to P. DeNicholas, Incorporated, the other defendant.  There was a sidewalk freight elevator which was used for the purpose of carrying objects to and from the cellar which

was used not only by the restaurant but also by the Rialto theatre, another tenant of the church congregation.

Guensch was employed by M. Mark & Son, dealers in delicatessen supplies, and was delivering merchandise to P. DeNicholas, Incorporated. He had obtained a check for the goods from Mr. DeNicholas pursuant to instructions from his employer. He was then told by DeNicholas, as he had been many times before, to go outside and open the iron sidewalk elevator doors when the elevator was sent up for the merchandise. Plaintiff presently opened one door and laid it on the sidewalk. The elevator platform was level with the sidewalk. He stepped on it and started to raise the other door when the elevator dropped down and he suffered injuries, both serious and permanent, of which he complained.

The elevator was about fifteen years old and was hand operated. The platform was nearly five feet square and there were the customary cables, gears, grooved drums and brakes designed for the proper operation thereof. The elevator travels a distance of nine or ten feet.

The proofs show that the elevator platform, as observed immediately after the accident by a number of witnesses, had dropped halfway down, was at an angle of forty-five degrees and one of the cables was off the drum. The Otis elevator people were immediately sent for to make repairs and their employe, when he arrived the next day, found the elevator platform in the same condition observed by the other witnesses, and also noticed that both cables were off the drums, which were not provided with guards.

An expert witness testified that slack cables caused the accident and can exist for a long time and are observable by the operator of such an elevator and are due to running the elevator below the proper landing stage, causing the cables to ultimately work off the drums when weight is applied.

On cross-examination, this witness testified: "Q. What caused it to drop, in your opinion? A. The cables being crossed in the position to come off the drum. Q. Would they come off the drum? A. They would. Q. Then what happened to the elevator? The elevator came down, didn't

it, and took up and tightened that cable? *A.* It tightened the cable around the shaft of the drums. *Q.* Then the cable would be when it got part way down, taut? *A.* Exactly. *Q.* And there wouldn't be three or five turns off the drum, would there? *A.* Yes, they would be wrapped around the shaft." This seems to have been the case.

DeNicholas testified that the elevator had been hard to handle for sometime, and he had complained to the church people about it.

The lease provides as follows: "The party of the second part are to have the use of the sidewalk lift in common with the tenant to the south of the premises hereby rented."

The rules and regulations thereto attached provided as follows: "The sidewalk, halls, passageways, elevators and stairways shall not be obstructed by any of the tenants or used by them for any other purpose than ingress and egress from and to their respective apartments and for signs on boards erected for that purpose."

The defendant, the trustees of the Third Presbyterian Church, argues but two grounds for reversal, namely, that there should have been a nonsuit or a directed verdict. The learned trial judge first submitted to the jury the question of whether the plaintiff was an invitee. We think that was proper under the proofs adduced. DeNicholas denied that he told plaintiff to step on the elevator or to take the goods to the cellar, but since there was positive conflicting testimony otherwise, the question was one for the jury and not for the court. "A servant who enters on the premises on the business of his master, in which business the master and the owner or occupant have a mutual interest, occupies the status of an invitee." 45 *Corp. Jur.* 818. See, also, *Riley* v. *Jersey Leather Co.,* 100 *N. J. L.* 300.

It might be said in passing that there was also an abundance of proof of an implied invitation. The case, however, was not submitted to the jury on that theory, and there would have been no reason so to do.

"Furthermore, where a landlord has furnished agencies, appliances or instrumentalities for the common use of several

tenants of a building, he is in general liable for any injuries arising from his neglect to keep the same in proper repair. The duty owed by a landlord extends not only to the tenant himself, but to members of his family, employes, guests and invitees, and in general all coming in under tenant's title. * * * An owner leasing different floors or rooms to several tenants, but maintaining the management and control of an elevator, is liable for injuries to tenants, their employes, invitees, and others lawfully using the same resulting from the defective condition of the elevator or its negligent management, operation, or use." 36 *Corp. Jur.* 212, 215. See, also, New Jersey cases collected and considered in *Stathos* v. *Bunevich,* 107 *N. J. L.* 269.

The trustees of the Third Presbyterian Church delegated one of their number to collect the rents and procure the necessary repairs to the property. This trustee telephoned to the Otis Elevator Company to come and make the repairs to the elevator after the accident occurred, and had besides employed that company, some six weeks before, to place a new platform and make other necessary repairs. There was, we think, a question for the jury whether the landlord had exercised that degree of care which a reasonably prudent owner would exercise to maintain the elevator, over which he reserved control for the use of tenants, in proper working order.

The landlord having assumed the duty of maintaining an elevator for the common use of two of the tenants in its building was under a duty to exercise reasonable care to maintain the elevator in proper working order. *Stathos* v. *Bunevich,* 107 *N. J. L.* 269. It would have been error, under the proofs adduced, to have taken the case from the jury since they could find, as they did, from the evidence that the landlord had constructive notice of a defective condition (slack cables) which might have been remedied before the occurrence by the exercise of reasonable care.

The case of *Greenwald* v. *Geller,* 9 *N. J. Mis. R.* 525, is not a case where the landlord assumed the duty to maintain in repair a portion of the premises reserved for the common use of several tenants, and is hence inapplicable.

On the evidence adduced contributory negligence could not have been a court question. There was testimony from which the jury could find that the plaintiff exercised reasonable care in everything he did. Nor is there merit in the contention that the testimony of the repairman, who came the next day, should have been excluded. There was an abundance of evidence from which the jury could have found that the same condition existed at the time of the accident. A number of witnesses testified as to what they observed immediately after the accident. The repairman found almost identical conditions next day. The elevator was half way down at a forty-five degree angle. One of the cables was off the drum. The repairman found both off. One off three turns and the other off one. A difference in the power of observation would account for the discrepancy in the testimony.

As to the contentions of the appellant P. DeNicholas, Incorporated, we think there is no merit in them. The charge of the learned trial judge, when examined as a whole, in a most admirable manner submitted to the jury the issues involved and further the requests to charge, in so far as they were proper, were covered.

. The principal contention of the defendant P. DeNicholas, Incorporated, is that if the landlord was liable to exercise reasonable care to maintain the elevator in working order that no duty devolves upon it. The theory on which the case was tried and submitted to the jury was that the plaintiff was requested by P. DeNicholas, Incorporated, to take the merchandise he was delivering down to the cellar on the elevator, which was being operated by the tenant's employe. There was some evidence that by the exercise of reasonable care the defect in the cables could have been discovered by the operator of the car. DeNicholas knew the elevator did not work well and he could have observed the slack cables since they were hand wound on the drums as the elevator was sent up. One cannot escape liability for inviting another to use an instrumentality which, by the exercise of reasonable care, he could have discovered to be defective because someone else was also under a similar duty.

The judgment appealed from is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMEBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ.   14.

*For reversal*—None.