LARRY STUPKA, appellee and cross-appellant, v. GEORGE SCHEIDEL et al., appellees; MATINA CONSTANTINE et al., appellants.

No. 48157.

(Reported in 56 N.W.2d 874)

FEBRUARY 10, 1953.

Bradshaw & Crawford, of Fort Dodge, for appellants.

Burnquist, Helsell & Burnquist, of Fort Dodge, for appellees.

Kelleher & Kelleher, of Fort Dodge, for appellee and cross-appellant.

GARFIELD, J.—Plaintiff, a professional window washer, was seriously injured in a fall from a second-story window in a brick store building in Fort Dodge. He brought this action to recover for his injuries against defendants Scheidel and Hicks, lessees of the second floor, and Matina Constantine, her son and two daughters, owners of the building. Plaintiff claims his fall was caused by the giving way of a screw eye at the side of the window, his safety belt was snapped over the eye and a finger was placed inside it, the screw eye was not properly embedded in the window frame, which was decayed, and it was defendants' duty to keep the premises in safe condition.

At the close of plaintiff's evidence there was a judgment on directed verdict for defendants Scheidel and Hicks, the tenants, on the ground they were tenants of only the inside of the second floor, had nothing to do with the outside, were under no duty to inspect it or warn of hidden defects. Plaintiff has appealed from this judgment. There was a jury verdict and judgment for plaintiff for $12,500 against defendant-owners from which they have appealed. We will first consider the owners' appeal. Plaintiff's motion to dismiss this appeal, ordered submitted with the case, is overruled.

The building is two stories high and over forty years old. The first floor was occupied by a shoe store, the second floor was leased to Scheidel and Hicks for what is called a club. John and Steve Constantine purchased the building about 1930. John died in 1940 and his widow, son and two daughters inherited his interest. In June 1949 Steve deeded his interest to John's widow and heirs, defendant-owners. Scheidel and Hicks occupied the second floor under oral leases with Steve Constantine from 1938 until after plaintiff fell July 23, 1949.

Over two years before plaintiff fell Scheidel and Hicks

engaged him to wash the second-story windows at least once a month. He had his own materials and equipment and the tenants paid him by the job. On the day he fell plaintiff had just finished washing the windows on the outside and was about to climb through a window to the inside when a screw eye at the side of the window pulled out, causing him to fall about 18 feet to the sidewalk.

The last window plaintiff washed was 20 inches wide and between 5 and 6 feet high. It was at the west side of a window 8 or 9 feet wide. About 20 inches above the ledge of the smaller window on each side of the sash, screwed into the wood jamb or casing, was a screw eye intended as a safety device for window washers and perhaps painters or other workmen. While plaintiff was washing the window he stood on the window ledge which extended out from the sash nearly 6 inches, one snap on his safety belt was hooked over the screw eye on the west side of the window and the middle finger on his left hand was placed inside the eye. When the screw eye pulled out this finger was inside it. Plaintiff did not fasten his safety belt to the screw eye on the east side of the window.

There is substantial evidence the wood in which the screw eye was embedded needed paint badly and was decayed, causing the screw eye to be insecure. The screw was $\frac{1}{4}$ inch in diameter and tapered to a point. The shank of the screw was heavily rusted near the eye. The lower threaded part not rusted was only about $\frac{5}{8}$ inch long. The hole left in the surface of the wood when the screw pulled out was $\frac{1}{2}$ to $\frac{5}{8}$ inch in diameter. It was $\frac{3}{4}$ to one inch deep. Rotten wood adhered to the screw when it pulled out.

I. Defendant-owners argue they were entitled to a directed verdict on the ground plaintiff, as to them, was a bare licensee to whom they owed no duty which was violated. They say the second story of the building was in control of the tenants to whom the owners were under no duty to keep it in repair and they were under no greater duty to plaintiff than to the tenants. Plaintiff contends, however, defendant-owners retained control of the outside of the building, he was an invitee of the tenants and an implied invitee of the owners who violated their duty

toward him by negligently allowing a condition to exist which imperiled his safety. These conflicting claims present the principal questions for our decision.

 It is true generally that the owner or occupant of realty is under no duty to look out for the safety of a bare licensee who comes on the premises without invitation express or implied. However the one who has control of realty owes a duty to those who come upon it by express or implied invitation to exercise ordinary care to keep it in condition which will not imperil their safety. Keeran v. Spurgeon Mercantile Co., 194 Iowa 1240, 191 N.W. 99, 27 A. L. R. 579, and citations; Mann v. Des Moines Ry. Co., 232 Iowa 1049, 1062–1070, 7 N.W.2d 45, 53–57; Sulhoff v. Everett, 235 Iowa 396, 16 N.W.2d 737.

 As a general rule an owner who has leased a building to another without any agreement to repair is not liable to the tenant, or to one who has entered the premises on the tenant's invitation, for personal injuries sustained by reason of their unsafe condition. However this rule does not apply where the owner retains control, or the owner and tenant have joint control, over the premises or the part thereof where the injury occurs.

This exception to the rule is frequently invoked where an injury is caused by the condition of a hall, passageway, stairway or elevator over which the owner, alone or jointly with the tenant, has control. Such an owner is liable to one who has been so injured after coming upon the premises by invitation from the tenant. There are other exceptions to the general rule which need not be considered here. See Burner v. Higman & Skinner Co., 127 Iowa 580, 103 N.W. 802; Casey v. Valley Sav. Bk., 231 Iowa 19, 23, 300 N.W. 733, 735; Barrett v. Stoneburg, 238 Iowa 1068, 1074, 29 N.W.2d 420, 423.

The above views find support in Burner v. Higman & Skinner Co., supra, cited by both sides; Noyes v. Des Moines Club, 178 Iowa 815, 160 N.W. 215; Dillehay v. Minor, 188 Iowa 37, 175 N.W. 838, 11 A. L. R. 106; Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 674–679, 26 N.W.2d 429, 443–446, and citations; Primus v. Bellevue Apartments, 241 Iowa 1055, 1060, 44 N.W.2d 347, 350, 25 A. L. R. 2d 565, 572; Swenson v. Slawik, Minn., 53 N.W.2d 107, 110; annotations 25 A. L. R.2d 364; 97 A. L. R. 220,

and earlier annotations there cited; 32 Am. Jur., Landlord and Tenant, section 688; 52 C. J. S., Landlord and Tenant, section 417b, pages 24–26 ("Liability in such cases does not depend primarily on the portion of the building or premises in which the defective condition occurs but on the fact that the landlord has retained control.")

Applicable here is Restatement, Torts, section 360, approved in Primus v. Bellevue Apartments (at page 1060 of 241 Iowa) and Hull v. Bishop-Stoddard Cafeteria (at pages 678, 679 of 238 Iowa): "A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

This from Primus v. Bellevue Apartments, supra, at pages 1059, 1060 of 241 Iowa, applies to the principal decisions, such as Flaherty v. Nieman, 125 Iowa 546, 101 N.W. 280, and Starr v. Sperry, 184 Iowa 540, 167 N.W. 531, defendant-owners cite here: "Defendants rely largely upon authorities having reference to defects in parts of the rented premises of which the tenant has possession and over which the landlord does not have control." Both decisions last cited clearly recognize the duty of an owner to keep in reasonably safe condition portions of a building over which he retains control.

There is little doubt plaintiff was using that part of the building from which he fell by express invitation of the tenants. Under the above authorities he was also an implied invitee of defendant-owners provided they retained control, alone or jointly with the tenants, of that part of the building. While perhaps owners most frequently retain control of halls, stairways and the like they may of course keep control of the outside of the building. See Restatement, Torts, section 360, comment c.

There is substantial evidence here defendant-owners retained control of the outside of the second story of the building either themselves or jointly with Scheidel and Hicks. Defendant Matina Constantine testifies in substance the tenants took care of the inside of the upper floor but "anything on the outside" was the owners' business.

The jury could properly find that by the exercise of reasonable care defendant-owners could have discovered the unsafe condition of the screw eye that pulled out and could have made the condition safe. There is evidence tending to show this screw eye was placed in this same wooden casing for use of window washers when the building was built over forty years before plaintiff fell. The owners had apparently done nothing to discover the defective condition or remedy it.

█ The natural tendency of wood to decay when exposed to the weather and badly in need of paint is commonly known. It is generally known too that decayed wood furnishes insecure anchorage for a screw of such description as this. The jury could find the owners should have considered these facts and taken steps to remedy them. See Williams v. Dickson, 122 Minn. 49, 141 N.W. 849, 850; Anderson v. Winkle, 213 Minn. 77, 5 N.W.2d 355, 357; Graeber v. Anderson, Minn., 53 N.W.2d 642, 646; 31 C. J. S., Evidence, section 74; 20 Am. Jur., Evidence, section 71.

We hold defendant-owners were not entitled to a directed verdict upon the ground here considered.

█ II. There is no merit to the contention plaintiff was guilty of contributory negligence as a matter of law principally on the ground he did not fasten his safety belt to both screw eyes. There is evidence tending to show it was not feasible to fasten the belt at both sides of such a narrow window unless the straps were allowed to be loose. It is somewhat speculative that plaintiff would not have fallen if his belt had been so fastened. There is testimony the method plaintiff employed was safe if the wood in which the screw was set had been sound. Plaintiff had used this method without mishap many times in washing these windows. He was not aware of the defective condition that caused his fall. Plaintiff had a right to assume, unless he knew or should have known otherwise, the screw eye was reasonably safe

for him to use. Steele v. Grahl-Peterson Co., 135 Iowa 418, 425, 428, 109 N.W. 882; Warner v. Spalding & Kearns, 186 Iowa 137, 172 N.W. 263.

These precedents in addition to those just cited tend to support our conclusion the issue of plaintiff's freedom from contributory negligence was properly submitted to the jury: Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1260, 1261, 30 N.W.2d 97, 101, 102, and citations; Dillehay v. Minor, supra, 188 Iowa 37, 42, 175 N.W. 838, 11 A. L. R. 106; Toney v. Interstate Power Co., 180 Iowa 1362, 1378, 163 N.W. 394; Swenson v. Slawik, supra, Minn., 53 N.W.2d 107, 111; Williams v. Dickson, supra, 122 Minn. 49, 141 N.W. 849, 850.

██ ██ III. Defendant-owners complain of the court's failure to instruct the jury upon the issue of plaintiff's assumption of risk. They also complain of instruction 9. The record is not such that we are required to consider these complaints.

A preliminary draft of instructions was submitted to counsel. What they contained is not shown. Defendants' counsel stated they objected to instruction 9 on the ground it should state that if the tenants had exercised control over the maintenance of the building in the matter of window washing the owners would be relieved of liability. Counsel also stated they asked for an instruction on assumption of risk. However, the record recites no objections or exceptions were made to the instructions read to the jury.

This recital seems to indicate defendants abandoned their objection to instruction 9 of the preliminary draft and their informal oral request for an instruction on assumption of risk. This conclusion is strengthened by the absence of any objection to the instructions in the owners' motion for new trial. Of course such objections could not be made for the first time in that motion. Rule 196, Rules of Civil Procedure; Hunt v. Breneman, 241 Iowa 1275, 1277, 45 N.W.2d 138, 139; Pond v. Anderson, 241 Iowa 1038, 1046, 44 N.W.2d 372, 377. But if objections to the instructions were made before they were read to the jury, as rule 196 requires, the objections could again be asserted in the motion for new trial and this is commonly done.

Further, rule 196 provides objections must be made to the "instructions in their final form" if they are to be considered

on appeal. In re Will of Soderland, 239 Iowa 569, 583, 30 N.W.2d 128, 136. No such objections were made here. Nor was there any objection or exception taken before the instructions were read to the jury to the failure to give any requested instruction as required by rule 196. In this state of the record the instructions stand as the law of the case and are not subject to review here. Nichols v. Kirchner, 241 Iowa 99, 105, 40 N.W.2d 13, 17, and citations.

 Since the owners strenuously argue the alleged error in failing to instruct on assumption of risk we will say we find no reversible error in this assignment. This is an affirmative defense defendants had the burden to prove. The doctrine of assumption of risk does not apply unless plaintiff had actual knowledge of the danger involved or it must have been obvious. Bohnsack v. Driftmier, 243 Iowa 383, 390–395, 52 N.W.2d 79, 83–85, and citations. There is no evidence plaintiff knew the defective condition of the screw eye it is claimed caused his fall or the danger involved in its use.

 IV. Defendant-owners' motion for judgment notwithstanding verdict under rule 243, Rules of Civil Procedure, raised for the first time the failure of plaintiff's petition to allege one leg was amputated as a result of his injuries. The motion asserted that because of this failure the petition omitted "to aver some material fact or facts necessary to constitute a complete cause of action" within the meaning of rule 243(a) and defendants were taken by surprise by evidence the leg was amputated. Defendants now argue they were misled by the absence of such an allegation from the petition.

Plaintiff's petition does not aver in so many words his leg was amputated but it does say in part, "Plaintiff has lost the use of his right foot * * *. He has had to submit to numerous surgical operations and * * * will in the future be compelled to submit to operations * * *." Upon the trial it was shown without objection plaintiff's injured right leg was amputated eight inches below the knee five and one-half months after the petition was filed. It is clear this evidence is not outside the issues tendered by the petition, and an objection upon that ground, if made,

would not be good. Arenson v. Butterworth, 243 Iowa 880, 889–891, 54 N.W.2d 557, 562, 563, is somewhat in point.

Further, amputation of plaintiff's leg is only one of several elements of damage for which his petition seeks recovery. The material "facts necessary to constitute a complete cause of action" under rule 243(a) are fully averred in the petition although the allegations above referred to are ignored. The claimed failure of the petition to allege plaintiff's leg was amputated did not, therefore, entitle the owners to judgment notwithstanding verdict under rule 243(a).

The author's comment under rule 243 in 3 Cook's Iowa Rules Civil Procedure, Revised Ed., page 24, is "Subdivision (a) * * * permits judgment because the prevailing party has pleaded no cause of action or defense." It is clear plaintiff's petition pleads a cause of action.

The above are defendant-owners' only claims to a reversal.

V. We consider now plaintiff's appeal from the judgment against him on directed verdict in favor of defendant-tenants Scheidel and Hicks on the ground they were tenants of only the inside of the second floor, had nothing to do with the outside and were under no duty to inspect it or warn of hidden defects. Of course the evidence must be considered in the light most favorable to plaintiff.

We cannot accept the tenants' suggestion that plaintiff's appeal presents nothing but a moot question because, it is said, he has a collectible judgment against the owners. There is nothing in the record as to the collectibility of the judgment. In any event, regardless of the judgment against defendant-owners, plaintiff is entitled to a reversal upon his appeal (which we must assume was taken in good faith) if the directed verdict against him was error.

Plaintiff argues the jury could properly find the tenants were in joint control with the owners of the part of the building he was using and from which he fell and were under the same duty toward him to use ordinary care to see that it was kept reasonably safe for him to use.

The directed verdict in favor of the tenants cannot be upheld. Plaintiff was entitled to have his claim against them

submitted to the jury. It does not follow from the fact the owners were liable to plaintiff that the tenants are not also liable.

As we have said, there is little doubt plaintiff was using the part of the building from which he fell by express invitation of the tenants. They engaged him to wash these windows monthly or oftener over two years before he fell and he had washed them about thirty times. During the eleven years the tenants occupied the second floor the owners never arranged to have the windows washed. The tenants looked after that. They long exercised, with the owners' acquiescence, at least partial control over the outside of the windows.

It was necessary to wash the windows on the outside as well as the inside if the tenants' quarters, used for a club, were to be pleasant and attractive. If plaintiff had been injured while washing the inside of the windows because of a defective condition like that which caused his fall, he would clearly have a case for the jury against the tenants. Since it was equally essential to wash the outside of the windows if they were to be kept clean and the tenants had long followed the practice of having this done, we think plaintiff had a case for the jury under the circumstances here.

Plaintiff testifies and it is not denied, "I just went up to Scheidel * * * and asked him if I could take the job of washing his windows monthly or oftener if he needed it. He told me to go ahead and wash them. He said, 'Be sure and use your safety belt', and I did. * * * There was no other place to fasten my safety belt to in doing my work except those eye bolts. Scheidel did not show me any place to fasten my belt except to the eye bolt." (We have called them "screw eyes.")

Since the screw eye that gave way and the one on the other side of the window were the only devices to which plaintiff could fasten his safety belt, the direction defendant Scheidel gave plaintiff amounted to an express direction from the tenants to use the screw eye that pulled out. Certainly the jury could properly find the tenants intended plaintiff to use this screw eye.

Having engaged plaintiff to wash the outside of the windows under an arrangement which contemplated use of the screw

eye that gave way, the tenants were under the duty to exercise ordinary care to discover its unsafe condition and to make it reasonably safe for plaintiff. The tenants' duty in this regard is akin to that of a master to exercise ordinary care to furnish a servant a reasonably safe place to work.

The finding is warranted that the tenants failed to discharge their duty toward plaintiff and as a result he was injured. What we have said as to the failure of the owners to perform a like duty and the authorities cited to support that conclusion are applicable here.

It is unimportant whether plaintiff was an independent contractor, as the tenants contend, or a casual employee, as plaintiff argues. The important consideration is that he was using the part of the building from which he fell by the tenants' express invitation and they owed him the duty of exercising ordinary care to see that it was reasonably safe for his use.

The conclusion we have reached on plaintiff's appeal finds support in Hull v. Bishop-Stoddard Cafeteria, supra, 238 Iowa 650, 674, 675, 26 N.W.2d 429, 443, 444; Burner v. Higman & Skinner Co., supra, 127 Iowa 580, 585, 590, 103 N.W. 802, 804; Warner v. Spalding & Kearns, supra, 186 Iowa 137, 172 N.W. 263; Steele v. Grahl-Peterson Co., supra, 135 Iowa 418, 109 N.W. 882; Guensch v. Trustees of Third Presbyterian Cong., 109 N. J. L. 78, 160 A. 507.

Both the Hull and Burner cases, supra, hold an invitee, injured in a fall down an open elevator shaft, had a case for the jury against both the owner of the building and a tenant of part of it which used the elevator. The principles upheld in those decisions are applicable here. In the Hull case plaintiff was a garbage collector, Macon Realty Company owned the building, and Bishop's was a tenant of part of it. We quote from the opinion at pages 674, 675 of 238 Iowa, pages 443, 444 of 26 N.W.2d:

"Whether he was an independent contractor or a patron of Bishop's, he was rightfully on the premises, and rightfully using the elevator and its appurtenances, with Bishop's express invitation. As such invitee, Bishop's owed him the duty of exercising reasonable and ordinary care in the operation and maintenance

of its place of business to avoid injuring him. By the terms of its agreement or arrangement with Bishop's, the realty company leased specified portions of its building to Bishop's for occupancy and use as a restaurant, and also granted to said lessee the right to use and operate the elevator and its appurtenances and equipment, in common with the lessor and other tenants, so far as the proper operation of its business required. By such use, Bishop's made the elevator, its shaft, gates, equipment, and entry room a part of its place of business, which it furnished and directed the plaintiff to use. Having done so it was incumbent on it to use ordinary care to make and maintain the place where plaintiff worked, including the elevator and its appurtenant instrumentalities, reasonably safe for him. For Bishop's to allow conditions to exist which proximately caused injury, the injury to plaintiff would be a breach of that duty. A duty which is imposed by law and not by contract. [Citations.]

"Such duty was owed plaintiff by Bishop's * * * regardless of any duty owed by the realty company to plaintiff."

Hull v. Bishop-Stoddard Cafeteria, supra, is cited with approval in Primus v. Bellevue Apartments, supra, 241 Iowa 1055, 1060, 44 N.W.2d 347, 350, 25 A. L. R.2d 565, 572. See also 52 C. J. S., Landlord and Tenant, section 436, page 115.

Guensch v. Trustees of Third Presbyterian Cong., supra, states (at page 82 of 109 N. J. L., page 509 of 160 A.) : "One cannot escape liability for inviting another to use an instrumentality which, by the exercise of reasonable care, he could have discovered to be defective because someone else was also under a similar duty."

Affirmed on appeal of defendant-owners; reversed on appeal of plaintiff.

All JUSTICES concur except LARSON, J., not sitting.