**Beverly SHILL and Allan Shill, Appellees,**

v.

**The CAREAGE CORPORATION and Safecare Company, Inc., Associated Together and in a Joint Venture Known as Safecare—Careage Venture 12, Appellants,**

**and**

**Continental Care Centers of Council Bluffs, Inc., Defendant.**

**No. 83–1206.**

Supreme Court of Iowa.

Aug. 22, 1984.

John M. French of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, for appellants.

Peter J. Peters, Council Bluffs, for appellees.

Considered by McCORMICK, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

Defendant landlord [1] appeals from a negligence action tried to the court in which an

---

1. Although the property is owned and leased by two corporations associated together in a joint venture, we will, in keeping with the custom of

employee of its tenant recovered damages from the landlord for injuries sustained in a fall on the leased premises. The employee's husband was also awarded damages for loss of consortium. On appeal, the landlord claims the trial court erred by holding that a failure to record a lease pursuant to Iowa Code section 558.41 left the landlord in control of the premises as a matter of law. While the plaintiffs support this ruling by the trial court, in event of error they advocate two alternative theories of recovery. First, they suggest the warranty of habitability implied in residential leases should be extended to commercial leases. Second, they urge us to no longer require control of the premises by a landlord as a prerequisite of tort liability for injuries caused by the unsafe condition of the premises. The landlord answers these contentions by pointing out that these two theories of liability are being raised for the first time on appeal and thus should not be considered. We hold that a failure to record a leasehold interest does not affect the factual determination concerning control of the premises and that we will not consider plaintiffs' alternate theories since they were raised for the first time on appeal.

■ Beverly Shill, a registered nurse, was employed at a nursing home in Council Bluffs known as the Council Bluffs Care Center. On March 4, 1980, while on her way to work, Shill was injured when she slipped on a patch of ice near the back entrance of the nursing home. She filed a claim for workers' compensation benefits and subsequently entered a special case settlement with her employer. Although the settlement agreement was signed by Council Bluffs Care Center, a division of Continental Care Corporation, evidence at trial revealed that this designation was an unrecorded trade name used by the operator/lessee of the nursing home, Continental Care Centers of Fullerton, Inc. Some time after this settlement, Shill instituted a negligence action against the record titleholders of the real estate, The Careage Corporation and Safecare Company, Inc., Associated Together in a Joint Venture as Safecare-Careage Venture 12[2] (landlord) and the alleged operator of the Council Bluffs Care Center, Continental Care Centers of Council Bluffs, Inc.[3] Shill's husband, Allan, joined her action claiming damages for loss of consortium as a result of the injuries his wife sustained.

Continental Care Centers of Council Bluffs, Inc., denied plaintiffs' allegations that it operated the nursing home and moved for a dismissal at the end of plaintiffs' case and again at the close of all the evidence. The trial court concluded that the Shills had offered no evidence as to the relationship, if any, between Council Bluffs Care Center and Continental Care Centers of Council Bluffs, Inc. It alluded to the defendant's evidence that the Council Bluffs Care Center is an unrecorded trade name of Continental Care Centers of Fullerton, Inc., and held that under the record made, it was compelled to dismiss the claim against Continental Care Centers of Coun-

---

the trial court, refer to the landlord as a single entity.

2. An amendment to the Joint Venture Agreement introduced at trial revealed that Careage Corporation had assigned its one-half undivided interest in the joint venture to E.A. Lynn Homes resulting in a joint venture known as Safecare-E.A. Lynn Homes Venture 12. No warranty deed appears in the record so the state of the legal title cannot be ascertained. Whatever the state of the legal title, it is clear that this transfer was never recorded in the county recorder's office. Since we find no liability on the part of the landlord, we need not address the ramifications of this assignment.

3. Obviously, the Shills did not know the correct identity of the operator of the Council Bluffs Care Center and also apparently believed the operator/lessee was a separate entity from Mrs. Shill's employer and thus their suit would not be barred by her workers' compensation remedy and settlement. Continental Care Center of Council Bluffs, Inc., is like Continental Care Centers of Fullerton, Inc., a subsidiary of Continental Care Corporation and is operating or has operated a pharmacy and a nursing home in Coralville, Iowa. It apparently never had any connection with the Council Bluffs Care Center.

cil Bluffs, Inc. No appeal was taken from that ruling.

The trial court did hold the landlord liable and awarded damages to Beverly and her husband Allan. In doing so, the court found the roof of an overhang on the nursing home did not have a drainage downspout to handle water draining off the roof and that the patch of ice was created by snow that had melted during the previous day and frozen overnight on the parking lot. It determined the landlord was in control of the premises and under a duty of care to properly maintain the premises. It found this duty was breached by its failing to install guttering at the edge of the overhang, failing to adequately light the area, and failing to salt or sand the parking lot.

■ *I. Effect of an unrecorded lease.* The landlord asserts that a failure to record a leasehold interest and any subsequent assignments does not, as a matter of law, place control of the rented premises in the landlord. We must agree.

The facts concerning control of the premises are undisputed. A deed conveying the property to the landlord was executed and recorded in April of 1970. A lease of the premises dated October 28, 1970, between the landlord and a lessee was placed into evidence. This initial lease was never recorded. Several subsequent assignments of that lease, which contained references to the original lease, were placed of record in the county recorder's office, although the last assignment to the present lessee, Continental Care Centers of Fullerton, Inc., was not recorded. The lease contained a provision that the lessee was responsible for the condition and repair of the premises and that all improvements and repairs were to be made at lessee's expense. The lease also specifically provided that the lessee would remove snow and ice from all walkways and stairs leading to and from the premises. The only evidence as to acts of physical control of the premises showed the lessee rather than the landlord performed all repairs and maintenance.

The trial court ignored the factual evidence that Shill's employer, the lessee, had control over property and was responsible for maintenance and repairs and instead held the landlord had control of the premises. In doing so, the court relied on a recording statute which provides: "No instrument affecting real estate is of any validity against subsequent purchasers, without notice, unless filed in the office of the recorder of the county in which the same lies, as hereinafter provided." Iowa Code § 558.41. The court found as a matter of law there was a correlation between the recording statutes and the rights of an injured party and went on to state that "[t]he failure to record the lease in this case leaves the landlord in control of the property." Having concluded the landlord retained control over the premises, the court then invoked the rule that an employee of a tenant is not precluded from recovering damages from a landlord for injuries negligently caused on that part of the premises under the landlord's control. While we have no quarrel with this latter rule, we do hold the trial court misinterpreted the consequence of the recording statute.

■ The protection of the recording statute extends to individuals or entities claiming a right, title or interest in the property. By its terms, this statute only purports to protect "subsequent purchasers for valuable consideration, without notice." Iowa Code § 558.41. The purpose of the recording act is "to notify subsequent purchasers and incumbrancers of the rights [the recorded] instruments are intended to secure." *Connolly v. Des Moines & Central Iowa Railway*, 246 Iowa 874, 890, 68 N.W.2d 320, 330 (1955) citing *Pels v. Stevens*, 187 Iowa 443, 462, 173 N.W. 56, 63 (1917). *See also* 51C C.J.S. *Landlord and Tenant* § 220 (1968). As such, the statute has no correlation to the rights of an injured party, and the trial court erred in extending the protection of section 558.41 to a tort plaintiff.

■ Having determined that an unrecorded lease does not affect the issue of control of the premises in a negligence

action, we also conclude there was no factual basis in the record to support a finding that the landlord retained control of property. Instead, the evidence conclusively indicates that for a period of approximately ten years, the landlord through a lease had surrendered control of the premises to a tenant who in turn was responsible for all repairs and maintenance. Even if we centered our search for negligence on the construction of the overhang, the plaintiffs did not show this was built during the original construction before the lease became effective and control passed to the tenant.

*II. Alternate theories of recovery.* Plaintiffs contend even if the trial court misinterpreted section 558.41, the finding of liability on the part of the landlord was nonetheless correct. To support this conclusion, plaintiffs raise new and novel questions involving an extension of our implied warranty of habitability in residential leases adopted in *Mease v. Fox,* 200 N.W.2d 791 (Iowa 1972) to commercial nonresidential leases and reversing our long-standing recognition of the majority rule noted in *Stupka v. Scheidel,* 244 Iowa 442, 56 N.W.2d 874 (1953) that generally a landlord who does not retain control of leased premises is not liable to the tenant or his invitees for the unsafe condition of the premises. *See also* Restatement (Second) of Torts § 355; 52 C.J.S. *Landlord and Tenant* § 417(3)(a) (1968); 49 Am.Jur.2d *Landlord and Tenant* § 780 (1970); *Wright v. Peterson,* 259 Iowa 1239, 1244, 146 N.W.2d 617, 620 (1967). The problem with plaintiffs' contentions is that they did not raise these theories before the trial court.

■ It is a basic rule of appellate practice that questions not presented to and not passed on by the trial court cannot be raised or reviewed on appeal. *Cole v. City of Osceola,* 179 N.W.2d 524, 527 (Iowa 1970). The theory under which a case was tried in the trial court will be the theory upon which an appeal is based. *Shinrone, Inc. v. Tasco, Inc.,* 283 N.W.2d 280, 286 (Iowa 1979); *Davidson v. Van Lengen,* 266 N.W.2d 436, 439 (Iowa 1978); *In re Disbarment of Meldrum,* 243 Iowa 777, 780, 51 N.W.2d 881, 882 (1952). We recently held that when a plaintiff relied in his pleadings on an express warranty without any further amendments, the trial court erred by entering judgment on a theory of implied warranty. *Gosha v. Woller,* 288 N.W.2d 329, 331 (Iowa 1980).

■ In our effort to determine the nature of the case and the theory for recovery adopted by the plaintiff, we initially turn to the pleadings. Under notice pleadings, Iowa Rule of Civil Procedure 69, we no longer adhere to the strict requirement that a specific cause of action be pleaded; however, a fair notice of the claim must be given. *Gosha,* 288 N.W.2d at 331.

In their petition, plaintiffs made no distinction between the owner of the premises and the operators of the nursing home when they alleged negligence. They pleaded all defendants were negligent in allowing snow to melt, collect and freeze in a place not readily visible and in failing to salt or sand the area. The pleadings give no hint that plaintiffs rely on the landlord's implied warranty of fitness as a basis for plaintiffs' recovery. As to plaintiffs' claim that they need not show the landlord's control over the premises, the pleadings are not clear on this issue. Therefore, we must look to other matters before the trial court to determine if this theory of recovery was presented to it.

■ While the pleadings provide notice concerning the general nature of the case, the plaintiffs may try the case with a more restricted theory of recovery. Issues raised by the pleadings may be narrowed by pretrial conference. *See Lamantia v. Sojka,* 298 N.W.2d 245, 247 (Iowa 1980). Likewise, plaintiffs' posttrial brief may present a solid understanding as to their theories of recovery.

■ In this case, plaintiffs' position before the trial court is dissimilar to their present claims concerning alternate theories of recovery. In their pretrial statements of issues, plaintiffs listed the following: (1) whether defendants were the owners of the real estate, and (2) were negli-

gent in maintaining a condition on the premises which was the cause of plaintiff's fall. Although plaintiffs' posttrial brief acknowledged the *Stupka* rule and section 355 of the Restatement of Torts, they argued it was not applicable because the lease was not recorded and left the landlord in control as a matter of law. Nowhere did plaintiffs indicate they were relying on either an implied warranty or on any theory that the landlord's control of the premises need not be established as a prerequisite to a consideration of landlord liability. It is clear that plaintiffs' two alternate theories for recovery were neither raised nor suggested to the trial court. We find these issues were not adequately preserved for review.

The trial court erred in entering judgments in favor of the plaintiffs rather than dismissing their action.

REVERSED.