**Tiffany FOUTS, A Minor, By Her Parent and Next Friend, Tracy JENSEN, Appellant,**

v.

**Mary MASON, Defendant,**

**Winifred Barker, Appellee.**

**No. 97–2230.**

Supreme Court of Iowa.

April 28, 1999.

As Amended on Denial of Rehearing May 17, 1999.

Rehearing Denied May 25, 1999.

Anthony F. Renzo of Babich, McConnell & Renzo, Des Moines, for appellant.

Joseph P. McLaughlin and Mark J. Wiedenfeld of Wiedenfeld Law Office, Des Moines, and Sharon Soorholtz Greer of Cartwright, Druker & Ryden, Marshalltown, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and CADY, JJ.

LAVORATO, Justice.

The plaintiff, Tiffany Fouts, through her mother, Tracy Jensen, appeals from a summary judgment ruling dismissing her claim against the defendant, Winifred Barker. Fouts seeks damages against Barker for personal injuries she received from a dog bite on property Barker owned. Fouts alleges two theories: strict liability under the provisions of Iowa's dog bite statute, Iowa Code section 351.28 (1997), and premises liability. The district court held as a matter of law that Barker was not liable under either theory. We affirm as to strict liability and reverse as to premises liability. We remand for further proceedings consistent with this opinion.

We review a district court's ruling on a motion for summary judgment for corrections of errors at law. Iowa R. App. 4; *See Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 528 (Iowa 1995). Summary judgment is proper only when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 237(c). The "genuine issue as to any material fact" requirement means the evidence is such that reasonable minds could differ on how the issue should be resolved. *Thorp Credit, Inc. v. Gott*, 387 N.W.2d 342, 343 (Iowa 1986). "An issue of fact is 'material' only when the dispute is over facts that might affect the outcome of the suit, given the applicable law." *Fees v. Mutual Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992).

A motion for summary judgment is functionally akin to a motion for directed verdict. *Thorp Credit*, 387 N.W.2d at 343. When ruling on a motion for a summary judgment, the district court must therefore (1) view the evidence in the light most favorable to the nonmoving party—in this instance Fouts—and (2) accord the nonmoving party every legitimate inference that can be deduced from the evidence. *Id.*

Accordingly, we must review the record as we would on a motion for directed verdict to determine whether Barker has shown no genuine issue of material fact. *See Dickerson v. Mertz*, 547 N.W.2d 208, 212 (Iowa 1996). On our review, we must, like the district court, view the evidence in the light most favorable to Fouts and accord her every legitimate inference that can be deduced from the evidence. *See id.* We, of course, must also determine whether the district court correctly applied the law. *Lawlor*, 528 N.W.2d at 528.

The record in this case consists of the pleadings, answers to interrogatories, and affidavits. Viewing the evidence in the light most favorable to Fouts, we glean the following facts from the record.

Barker lives in Marshalltown and owns two adjoining properties there. She lives in one of the houses (406 East Linn) and has rented the other house (404 East Linn) to her daughter, Mary Mason. In 1982, there was a fence at the back of the house where Barker lives. At that time, Barker joined this fence with a new fence around the back of 404 East Linn. There is no partition separating these two properties so, in effect, there is a single backyard with a common fence. In 1985, Mason moved into 404 East Linn.

Mason, with Barker's permission, has kept a chow/cocker spaniel mix—named Hank—in the single backyard since 1993. Hank was allowed to roam freely there. In 1994, the dog bit Mason's eight-year-old son, Trevor. The bite resulted in several stitches in Trevor's eye area. Barker was aware of this bite. Barker had at times fed, petted, and walked Hank when Mason was away or oth-

erwise busy. When Barker summoned Hank, he would come to her.

Jensen and her two children moved into Mason's house in May 1995. Mason and Barker warned Jensen to be careful around Hank because he had bitten Trevor. Mason told Jensen that Hank had also bitten Mason's infant grandson, Alex, on the finger. On at least two occasions, Barker told Jensen that Hank was dangerous around children.

Shortly after Jensen and her two children moved in with Mason, Hank attacked Tiffany, biting off a portion of her cheek. The incident happened halfway between the houses in the single backyard. At the time of the attack, Tiffany was two-and-one-half years old. Tiffany spent four days in the hospital. Among other significant injuries, she suffered permanent facial disfigurement. She also had bites on her right shoulder and hand.

## I. Strict Liability Under Iowa Code Section 351.28.

Iowa Code section 351.28 imposes strict liability for damages done by a dog:

> The owner of a dog shall be liable to an injured party for all damages done by the dog, when the dog is caught in the action of worrying, maiming, or killing a domestic animal, or the dog is attacking or attempting to bite a person, except when the party damaged is doing an unlawful act, directly contributing to the injury. This section does not apply to damage done by a dog affected with hydrophobia unless the owner of the dog had reasonable grounds to know that the dog was afflicted with hydrophobia and by reasonable effort might have prevented the injury.

*Id.*

At common law, one who harbored a dog knowing it to be vicious, as well as the owner in possession, was liable for the injuries committed by the dog. *Alexander v. Crosby,* 143 Iowa 50, 51, 119 N.W. 717, 717 (1909). At the time this court decided *Alexander,* there was a statutory provision similar to our present dog-bite statute, section 351.28. *See* Iowa Code § 2340 (1907).

In *Alexander,* this court concluded that section 2340 changed the common law by (1) dispensing with proof of scienter, and (2) imposing liability only on the owner in possession of the dog and not on one who simply harbors it. In interpreting the statute, the court observed:

> It will be noted that two changes from the common law are involved in this statute: (1) The "owner" alone is made liable, and (2) proof of *scienter* is dispensed with. The word "owner" is not of technical significance and is to be construed according to the context and approved usage of the language. As employed in this statute it evidently signifies the person to whom the dog legally belongs, for under the modern decisions the dog is recognized as a species of property.

*Alexander,* 143 Iowa at 53, 119 N.W. at 718 (emphasis added) (citation omitted). The court held that while liability is imposed on the legal owner, ownership could be shown by establishing that "the defendant had the dog in his possession, and was harboring [it] on his premises as owners usually do with their dogs." *Id.* (quoting *O'Hara v. Miller,* 64 Iowa 462, 463–64, 20 N.W. 760, 761 (1884)).

The court attempted to explain why the legislature based liability on "ownership" alone:

> The owner may be assumed to be familiar with the nature of his animal, and, if he elects to retain a dog whose manners are such as are likely to be corrupted by listening to the "call from the wild," this may well be at his own risk; but to charge one who does no more than furnish shelter to a wanderer and food to the stranger at his gate without knowledge of the bad character of his guest and render him liable might well be thought an ungracious recompense for kindness to "man's best friend."

*Alexander,* 143 Iowa at 54–55, 119 N.W. at 718.

At the time this court decided Alexander, there were taxation and licensing provisions of dogs which were not part of the chapter that imposed liability on a dog owner. *See* Iowa Code §§ 457, 458 (1897). For the pur-

poses of these provisions, any person "keeping or harboring a dog" was deemed to be an owner. *See* Iowa Code § 457.

In 1924, the legislature combined the taxation and licensing provisions (sections 457 and 458) and the liability provision (section 2340) into one chapter, Iowa Code chapter 276 (1927). Several years thereafter, this court held that the definition of "owner" ("[a]ny person keeping or harboring a dog") in the licensing and taxation provisions also defined an "owner" under the liability provision. *Bigelow v. Saylor*, 209 Iowa 294, 296, 228 N.W. 279, 280 (1929).

*Bigelow* did not define "keeping" or "harboring." We defined those terms in *Collins v. Kenealy* to apply to any person who keeps "permanent possession and custody of dogs on their premises with or without a showing of legal title." 492 N.W.2d 679, 682 (Iowa 1992) (interpreting Iowa Code section 351.2 (1989), which defined owner of a dog to include "in addition to its ordinary meaning . . . any person who keeps or harbors a dog") (emphasis added).

In *Collins*, the defendants brought their dog to the plaintiff to be groomed. The dog bit the groomer, and the groomer sued the owners. The district court sustained the defendants' motion for summary judgment. The district court concluded that the groomer, who had exclusive control of the dog, became an owner by statutory definition and could not recover from the dog's real owner. We reversed, concluding that the term " 'any person who keeps or harbors a dog' does not apply to a temporary custodian such as the plaintiff dog groomer in this case." *Id.* at 682. In short, because the dog groomer did not have permanent possession of the dog, we did not consider the groomer an "owner."

In 1994, the legislature repealed Iowa Code sections 351.1 through 351.24, the licensing and taxation provisions. That repeal carried with it the definition of "owner" found in section 351.2. We conclude the repeal narrowed the meaning of "owner" in the strict liability statute, Iowa Code § 351.28. *See Holding v. Franklin County Zoning Bd.*, 565 N.W.2d 318, 320 (Iowa 1997) (holding that if a provision is not in the statute, the court "must assume the omission

was deliberate"); *Tri–State Ins. Co. v. De Gooyer*, 379 N.W.2d 16, 19 (Iowa 1985) (holding that in construing a statutory change, a court must assume that the legislature was aware of the court's prior construction of the statute).

Here, the district court acknowledged the repeal and the repeal's legal effect but nevertheless assumed for the purposes of the case that the pre–1994 definition would control. Even though there was evidence that Barker, walked, fed, and petted the dog, the court found these actions were not enough to constitute harboring or keeping.

In applying the pre–1994 definition of "owner," the district court erred. The meaning of the word "owner" in section 351.28 is more narrow than its meaning before the 1994 repeal of the section 351.2 definition of "owner," which, as mentioned, included keeping or harboring. The word "owner" in section 351.28 now means legal owner as the court in *Alexander* had concluded. As we shall see, however, the district court reached the right result on this issue.

■ With the repeal of the statutory definition of "owner," we have come full circle to *Alexander*. As mentioned, in *Alexander*, this court held that while liability is imposed on the legal owner, ownership could be shown by establishing that "the defendant had the dog in his possession and was harboring it on his premises as owners usually do with their dogs." *Alexander*, 143 Iowa at 53, 119 N.W. at 718. Presumably, establishing legal title in these circumstances is not an absolute requirement. Thus, where there is no evidence of legal ownership, the plaintiff can still prove the defendant is the owner of the dog by showing that (1) the dog was in the defendant's possession, and (2) the defendant was harboring the dog on the defendant's premises as owners usually do with their dogs.

■ Applying the *Alexander* test, we conclude reasonable minds would not differ on whether the evidence shows that Barker was the owner of the dog; we hold as a matter of law she was not. Mason, not Barker, held legal title to the dog, a fact that was uncon-

troverted. This is as far as we need go on this issue.

## II. Premises Liability.

 Provided there is no agreement to repair, landlords are generally not liable for injuries arising from the unsafe condition of the premises arising after the landlord leases the property. *Allison v. Page*, 545 N.W.2d 281, 283 (Iowa 1996). However, the rule is subject to several exceptions. One exception includes circumstances in which the landlord retains control, or the landlord and tenant have joint control over the premises where the injury occurs. *Stupka v. Scheidel*, 244 Iowa 442, 447, 56 N.W.2d 874, 877 (1953). Generally, this exception applies where the injury is caused by the condition of common areas over which the landlord, alone or jointly with the tenant, has control. *Id.* In these circumstances, the landlord is liable to one who has been so injured after coming onto the premises at the tenant's invitation. *Id.* Thus, as to this exception, control determines liability.

This court has applied Restatement of Torts, section 360 (1934) to this exception. *Id.* at 448, 56 N.W.2d at 877. This provision remains unchanged in Restatement (Second) of Torts, section 360 (1977):

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

Restatement (Second) of Torts § 360, at 250 (1977).

 Unless there is evidence to the contrary, the law presumes that a landlord has retained control over premises used in common by different occupants of the landlord's property. *Primus v. Bellevue Apartments*, 241 Iowa 1055, 1059, 44 N.W.2d 347, 350

(1950). These common areas may be inside or outside the building housing the tenant. *Stupka*, 244 Iowa at 448, 56 N.W.2d at 878; Restatement (Second) of Torts § 360 cmt. e, at 252–53 (1977) (common area may include yard). The landlord's duty to keep the common areas reasonably safe does not arise from the usual implied covenant for quiet enjoyment incident to the leases of several portions of the premises. *Primus*, 241 Iowa at 1061, 44 N.W.2d at 351. Rather, such obligation is similar to that of any other owner or possessor of real estate who invites others to use the real estate for a particular purpose: to keep the common areas reasonably safe for those using them within the scope of the invitation. *Id.*

The question this case presents is whether a landlord has a duty to keep common areas reasonably safe by excluding a dog with known vicious propensities. This is a question of first impression for this court. Other courts, however, have addressed the issue. *Siegel v. 1536–46 St. Johns' Place Corp.* was one of the earliest cases to do so. *See* 184 Misc. 1053, 57 N.Y.S.2d 473 (N.Y.City Ct.1945). In that case, a tenant was bitten by another tenant's dog on the common stairway in the main hall of a multi-unit apartment house. The court held for the plaintiff. In doing so, the court concluded that the landlord had a duty to keep the common areas reasonably safe by excluding known vicious animals from those areas. *Id.* at 474. The fact that the landlord was neither an owner nor a harborer of the dog made no difference. *Id.*

*Linebaugh v. Hyndman* is of more recent vintage. *See* 213 N.J.Super. 117, 516 A.2d 638 (Ct.App.Div.1986). There the plaintiff was a child in the care of her baby-sitter who was a tenant in a two-family house. A dog owned by another tenant bit the child while the child was in the common backyard. The landlords were aware of the presence of the dog on their premises and knew that the dog had before this incident bitten another person. In reversing a trial court summary judgment ruling for the landlords, the appellate court said:

In our view, "[a]n abnormally [vicious] domestic animal is like an artificial [dangerous] condition in the property." Where a landlord, either by his affirmative consent or by his failure to take curative measures, permits another to harbor such an animal in those areas in which he retains control, he is liable to his tenants and others lawfully on the premises for the injuries that result. Consistent with the landlord's obligation to maintain the premises in a reasonably safe condition, a landlord is obliged to take reasonable measures to protect other tenants and their invitees from harm which a vicious dog is capable of inflicting. To permit a landlord in such a situation to sit idly by in the face of the known danger to others would be socially and legally unacceptable.

516 A.2d at 640 (citations omitted). The court formulated the following rule:

[A] landlord's responsibility to exercise reasonable care in the maintenance of common areas under his control encompasses a duty owed to his tenant's invitees to prevent injury from a vicious animal kept on such premises with his knowledge.

*Id.* at 639.

Several years ago, the Alabama Supreme Court reached the same conclusion. *See Gentle v. Pine Valley Apartments,* 631 So.2d 928, 933–34 (Ala.1994). Relying on these same authorities and Restatement (Second) of Torts section 360 (1977), the Alabama Supreme Court held that the presence of a tenant's vicious dog in areas shared by other tenants is a "dangerous condition" for which a landlord must exercise reasonable care to prevent injuries. *Id.* Before liability could be imposed, the court required that the landlord have direct or imputed knowledge of the dog's vicious propensities. *Id.* at 934–45.

Following the lead of Gentle, a Texas appellate court recognized the liability of a landlord in similar circumstances. *See Baker v. Pennoak Properties, Ltd.,* 874 S.W.2d 274 (Tex.App.1994). A dog belonging to a tenant bit another tenant while both tenants were walking their dogs in the common areas of their apartment complex. The court adopted the following two-prong test for determining the landlord's liability: "(1) the injury must have occurred in a common area under the control of the landlord; and (2) the landlord must have had actual or imputed knowledge of the particular dog's vicious propensities." *Id.* at 277. Because there was no evidence to counter the apartment manager's affidavit that there were no reports of problems involving the dog in question, the court affirmed a trial court summary judgment ruling in favor of the landlord. *Id.*

■ We join these jurisdictions and now hold that a landlord has the duty to keep the common areas reasonably safe by excluding a dog known to have vicious propensities. We limit our holding to two conditions: (1) the injury must have occurred in common areas over which the landlord, alone or jointly with the tenant, has control; and (2) the landlord knew or should have known of the particular dog's vicious propensities.

With these principles and our rule in mind, we turn to the summary judgment record in this case. In granting Barker's summary judgment on Fouts' premises liability theory, the district court relied heavily on our decision in *Allison.*

In *Allison,* a child was bitten by a dog belonging to a tenant of rental property after the child had entered the yard to retrieve a coat her sister had left there earlier. The dog was allowed to run free in the fenced-in yard. The child's mother brought an action on behalf of the child against the landlords. The parties tried the case on the theory of premises liability. There was no evidence that the landlord retained any control over any part of the property. The common area exception therefore did not apply. The only other possible exception left was the landlords' control over the dog. We rejected this argument because the evidence was uncontroverted that the dog came onto the premises *after* the property was leased. *Allison,* 545 N.W.2d at 283. Thus, even if the presence of the dog could be characterized as a condition of the premises, the general rule would control: A landlord is not liable for injuries caused by the unsafe condition of the property after it is leased, provided the landlord does not retain any control over the leased premises. *Id.*

■ Here, the district court used the same rationale: Barker, the landlord, did not have control over the dog that bit Fouts. The district court, however, overlooked one important fact distinguishing this case from *Allison:* Here, the jury could reasonably find that the injury occurred on property that was at the very least under the joint control of Barker and her daughter-tenant. The evidence is uncontroverted that behind the two adjoining properties in question is a fenced-in backyard with no partition separating the two properties. And it was Barker who built the fence in this manner before her daughter rented the property next door. From this evidence, we think the jury could reasonably infer that Barker intended the backyards of both properties as a common backyard to be used by her tenant and her. Thus, this evidence generates a genuine issue of material fact on whether Barker controlled the premises where the injury occurred.

■ The jury could also reasonably infer that Barker allowed the dog to roam over the common backyard, knowing full well that before this incident in question the dog had bitten two young children. This evidence, together with Jensen's affidavit that Barker told her the dog was dangerous around children, raised a genuine issue of material fact on Barker's knowledge of the dog's vicious propensities.

Some courts have characterized a vicious dog as a condition of the premises. *See, e.g., Linebaugh,* 516 A.2d at 640 ("In our view, '[a]n abnormally [vicious] domestic animal is like an artificial [dangerous] condition on the property.'") (citation omitted). We, however, prefer the analytical approach taken in *Shields v. Wagman,* 350 Md. 666, 714 A.2d 881 (1998).

In *Shields,* the plaintiff was attacked by a dog while the plaintiff was in the parking area of a strip mall. The landlord argued that, although he retained control of the parking area, he was not liable because he did not have control of the dog. Rejecting this argument, the court pointed out that its common-area cases did not require the landlord to have specific control over the instrumentality that caused the injury. *Id.* at 888. Rather, such cases required only that the landlord knew or had reason to know that there was the threat of injury from the instrumentality in the common areas over which the landlord retained control. *Id.*

■ The court in *Shields* cited as an example the familiar slip-and-fall case where the injury results from an accumulation of ice and snow on a common area. *Id.* The landlord does not have control over the instrumentality—the ice and snow—causing the fall and resulting injuries. The landlord, however, does have control over the common area where the injury occurs. When the landlord knows or has reason to know of the existing dangerous condition, the landlord—to avoid liability—must act to protect those using the common area. *Id.*; *see Bostian v. Jewell,* 254 Iowa 1289, 1295–96, 121 N.W.2d 141, 144–45 (1963) (holding in a case involving an injury resulting from a slip and fall on ice in a common area, landlord has duty to use reasonable care to keep the premises reasonably safe; Restatement of Torts section 360 (1934), cited with approval).

Similarly, here, although she may not have had control over the dog, Barker knew or had reason to know that the dog posed a danger to those in the common backyard. She therefore had a duty to take reasonable precautions to protect those lawfully in the common area. The district court erred in reaching a contrary conclusion.

We reverse and remand for further proceedings on the premises liability theory consistent with this opinion.

**REVERSED AND REMANDED WITH DIRECTIONS.**