Randy A. DAVIS and Nancy Davis, Husband and Wife, and Randy A. Davis, as Next Friend of Wendy Davis, a Minor Child, Appellants,

v.

OTTUMWA YOUNG MEN'S CHRISTIAN ASSOCIATION, State Farm Insurance Company, Blue Cross of Iowa, and Blue Shield of Iowa, Appellees.

No. 87–1568.

Supreme Court of Iowa.

March 22, 1989.

Rehearing Denied May 12, 1989.

Vern M. Ball of Ball Law Offices, Bloomfield, for appellants.

Richard J. Gaumer of Webber, Gaumer, Emanuel & Daily, P.C., Ottumwa, for appellee Young Men's Christian Ass'n of Ottumwa.

John N. Moreland and John R. Webber III of McKay and Moreland, P.C., Ottumwa, for appellee State Farm Ins. Co.

F. Richard Lyford and Elaine M. Brown of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for appellee Blue Cross of Iowa and Blue Shield of Iowa.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER and SNELL, JJ.

LARSON, Justice.

Randy Davis was employed by the Ottumwa YMCA in late 1982. One of the fringe benefits of this job was coverage under a group health insurance policy with Blue Cross and Blue Shield of Iowa (Blue Cross). Health insurance coverage was critical to Davis because his daughter, Wendy, was a Down's syndrome child.

Wendy soon required extensive medical treatment, and Davis looked to Blue Cross for reimbursement. Blue Cross denied coverage on the ground that Davis's employer, the YMCA, had allowed the policy to lapse for nonpayment of the premium. This left Davis without any coverage because he had canceled his private Blue Cross policy at the time he took the YMCA job.

Davis sued for reimbursement of Wendy's medical expenses and joined in the action the YMCA, Blue Cross, and State Farm Insurance Company, which had taken over the YMCA's group plan. The district court dismissed Davis's claims as to all defendants, and he appealed. We reverse and remand.

On appeal, four issues are raised: (1) whether a federal statute, 29 U.S.C. §§ 1001 *et seq.*, preempted Davis's common-law actions for breach of contract and negligence; (2) whether the district court abused its discretion in refusing to allow Davis to amend his petition to add a claim under the federal act; (3) whether Davis's appeal was timely as to State Farm Insurance Company, which had been dismissed from the action approximately two years earlier; and (4) whether a genuine issue of material fact could be generated against the defendants.

## I. *The Preemption Claim.*

■ There is a federal statute called the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, which deals with the area of employment benefits. In *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court recognized a broad preemptive effect of ERISA on similar actions arising out of employment relationships. In *Pilot Life,* the plaintiff instituted a diversity action against the defendant insurance company in federal court. His complaint contained three counts: tortious breach of contract, breach of fiduciary duties, and fraud in the inducement. The defendant moved for summary judgment on preemption

grounds, and the motion was granted. The federal court of appeals reversed, but the United States Supreme Court agreed with the district court that the common-law action was preempted by ERISA. The Court concluded that the causes of action asserted in plaintiff's complaint "relate to" an employee benefit plan, and therefore fall within ERISA's express preemption clause, § 514(a), as set forth in 29 U.S.C. section 1144(a).[1]

In the instant case, it is also clear that the claims in Davis's petition "relate to" an employee benefit plan and are, apparently, preempted by ERISA. Davis argues that he falls under an exception to ERISA because his case is based on state statutes "regulating" insurance companies. *See Pilot Life,* 481 U.S. at 45, 107 S.Ct. at 1552, 95 L.Ed.2d at 46 ("The saving clause excepts from the preemption clause laws that 'regulate insurance.'"). The Iowa "regulating" statutes on which Davis says his suit was based are Iowa Code chapter 91A, requiring the labor commissioner to collect "wages" and defining wages to include health insurance benefits, and Iowa Code section 509B.3, which requires all group policies to include conversion privileges.

The problem with Davis's exemption argument is that his petition did not mention, or even suggest, that these statutes were involved. He did not identify either statute by Code number or by alleging their substance. Moreover, we do not believe either statute is one "regulating insurance." Chapter 91A provides for employees' suits against employers for "wages," which Davis argues include health insurance premiums. *Pilot Life* held that, to be a basis for exemption from ERISA, "a law must not just have an impact on the insurance industry, but be specifically directed toward that industry." *Id.* at 50, 107 S.Ct. at 1554, 95 L.Ed.2d at 49. In determining whether the statute "regulates" insurance, we must not be guided by a single sentence or segment in the statute but by the provisions of the whole act, including its object

---

1. This section provides, in relevant part, that if a state law "relate[s] to ... employee benefit plan[s]" it is preempted. *Pilot Life,* 481 U.S. at 45, 107 S.Ct. at 1552, 95 L.Ed.2d at 46.

and policy. *Id.* at 51, 107 S.Ct. at 1555, 95 L.Ed.2d at 50.

Chapter 91A is not a statute which is excepted from coverage of ERISA. Its title is the "Iowa Wage Payment Collection Law," Iowa Code § 91A.1, and it deals exclusively with employer/employee relationships. It does not even purport to regulate insurance.

Davis also argues that his case is based on section 509.3, although he does not mention it by number. This section requires conversion privileges in all health insurance policies. Defendants' failure to allow Davis to convert from the group plan to an individual plan violated section 509.3, according to Davis. Section 509.3, however, only requires that group policies include conversion privileges; it does not deal with negligence or breach of contract by persons who allegedly lose those rights for their employees, as claimed here. Furthermore, the policy under which Davis thought he had coverage did include a conversion privilege.

We hold that Davis's claims are preempted by ERISA, because they "relate to ... [an] employee benefit plan" and do not fall within any of the exceptions to preemption contained in the ERISA statute. *See Pilot Life*, 481 U.S. at 45, 107 S.Ct. at 1552, 95 L.Ed.2d at 46.

The question remains whether Davis pleaded his case in such a way as to be under ERISA. The district court held that Davis's petition could not be construed to assert an ERISA claim and that he should not be permitted to amend his petition in order to include such a claim. These rulings provide the bases for the next two issues.

### II. *Notice Pleading.*

■ Our rules, and the cases under them, evidence a liberal view of pleading. Rule of civil procedure 69(a) requires only that a petition include "a short and plain statement of the claim showing that the pleader is entitled to relief." This rule has been interpreted to turn on the reasonableness of the notice conveyed by the petition. The rule does not require the identification of a specific theory of recovery if it advises the defendant of the incident out of which the claim arises and gives fair notice of the general nature of the claim. *Stessman v. Black Hawk Broadcasting Co.*, 416 N.W. 2d 685, 686 (Iowa 1987); *Unertl v. Bezanson*, 414 N.W.2d 321, 324 (Iowa 1987).

Despite the liberality of our pleading rules, however, we still require that a petition give "fair notice" of the claim. *Shill v. Careage Corp.*, 353 N.W.2d 416, 420 (Iowa 1984); *Gosha v. Woller*, 288 N.W.2d 329, 331 (Iowa 1980). The key in the present case, therefore, is whether Davis's original petition was sufficient to provide fair notice to the defendants that he was making a claim under ERISA.

■ It is clear that an ERISA claim was not in the contemplation of any of the parties at the outset. It was only after *Pilot Life* was decided in April 1987 that the parties attempted to conform their pleadings to the holding of that case. On May 7, 1987, Blue Cross and the YMCA sought to amend their answers and their previous motions for summary judgment. The court allowed the defendants' amendments. On June 3, 1987, Davis attempted to amend his petition to assert an ERISA claim. This chronology of events is a clear indication that none of the parties, most significantly the defendants, had "fair notice" from Davis's petition of an ERISA claim. It is difficult to believe that a state common-law claim based on negligence and breach of contract could be construed to be fair notice of an intent to rely on a federal statutory claim.

In this respect, the present case is similar to *Shill*, in which the petitioner originally pleaded only negligence and gave no hint of the theory of implied warranty on which the plaintiff attempted to rely. It is also similar to *Gosha*, in which the plaintiff pleaded only an express warranty and the district court found for him on the basis of implied warrant of habitability. In both of these cases, we held the petitions were inadequate to convey fair notice to the defendants. We reach that same conclusion here. This raises our next issue of wheth-

er Davis should have been allowed to amend his petition to assert an ERISA claim.

### III. *The Attempted Amendment.*

Davis's attempt to amend his petition to assert an ERISA claim, filed approximately 130 days before the trial date, was rejected by the district court which held it would substantially change the issues and would result in a "gross injustice" to the defendants. The amendment basically restated the earlier allegations of the petition but added elements and damage for emotional distress and attorney fees. Davis argues that these changes were not so substantial as to justify rejection of his proposed amendment, pointing to the similarity in the issues and the relatively long time remaining before the date set for trial. He further argues that it was unfair for the court to . allow the defendants to amend their answers to assert the preemptive effect of ERISA following *Pilot Life* and then refuse Davis leave to amend his petition to meet the preemption problem.

Iowa Rule of Civil Procedure 88 states that "leave to amend, including leave to amend to conform to the proof, shall be freely given when justice so requires." We have found that amendments are the rule and denials the exception. *Ackerman v. Lauver,* 242 N.W.2d 342, 345 (Iowa 1976). We have, however, accorded considerable discretion to the trial court rulings on such motions, and will reverse the court only when a clear abuse of discretion has been shown. *B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 284 (Iowa 1976). Moreover, an amendment which substantially changes the issues should not be allowed, *Ackerman,* 242 N.W.2d at 345, nor should amendments be allowed if it is found that the movants were negligent in asserting their cause. *See Neylan v. Moser,* 400 N.W.2d 538, 543 (Iowa 1987) (record did not support finding seven-month delay in amending claim was negligent).

It might be argued that Davis was negligent in not asserting his ERISA claim in his original petition. As he concedes, *Pilot Life* did not create new law; it only interpreted an existing one. His motion to amend came approximately one month after the defendants had moved to amend their answer to conform to *Pilot Life* and two months after *Pilot Life* was decided. We do not believe Davis was negligent in failing to foresee the preclusive effect given to ERISA under the *Pilot Life* decision. It seems that all parties were caught by surprise.

As to Davis's amendment substantially changing the issues, what ERISA requires is that

every employee benefit plan ... comply with Department of Labor regulations on giving notice to any participant or beneficiary whose claim for benefits has been denied, and affording a reasonable opportunity for review of the decision denying the claim. Under the civil enforcement provisions of § 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits.· Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits.... In an action under these civil enforcement provisions, the court in its discretion may allow an award of attorney's fees to either party.

*Pilot Life,* 481 U.S. at 53, 107 S.Ct. at 1556, 95 L.Ed.2d at 51. It is unlikely that the defendants would have "wasted" any discovery in preparing to defend against the common-law claims were an ERISA amendment allowed. The evidence supporting and refuting the common-law and ERISA claims would be virtually identical.

The bottom line on the amendment issue is whether the district court abused its discretion in refusing it. Abuse of discretion does not entail ill will, improper motive, or intentional wrong. We have held that discretion is abused when it is exercised on clearly untenable grounds or to a clearly unreasonable extent. *Ashmead v. Harris,* 336 N.W.2d 197, 199 (Iowa 1983) (abuse of discretion found in district court's compelling production of documents pre-

pared in anticipation of litigation); *Hubby v. State*, 331 N.W.2d 690, 697 (Iowa 1983). We have stated the test another way—that an abuse of discretion is found where the discretion is exercised on grounds or for reasons clearly unreasonable. *Sheer Constr. Co. v. W. Hodgman & Sons, Inc.*, 326 N.W.2d 328, 334 (Iowa 1982).

A United States Supreme Court case, *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), involved a claim of abuse of discretion in denying leave to amend a complaint pursuant to Federal Rule of Civil Procedure 15(a), quite similar to Iowa Rule of Civil Procedure 88. Under the federal rule, leave to amend is a matter left to the district court's discretion, as it is in Iowa. In *Foman*, the complainant originally alleged an express agreement by the complainant's father not to make a will, thus assuring the complainant of an intestate share as payment for her services on behalf of her mother. The complaint was dismissed on the basis of a state statute of frauds. Foman moved to vacate the judgment and amend her petition to allege the theory of *quantum meruit*. The district court denied her motions, and the court of appeals affirmed. Because an express contract could not survive a statute-of-frauds objection and the *quantum meruit* amendment had been denied, Foman was effectively foreclosed from pursuing any theory. The Supreme Court said:

> The Court of Appeals ... erred in affirming the District Court's denial of petitioner's motion to vacate the judgment in order to allow amendment of the complaint. As appears from the record, the amendment would have done no more than state an alternative theory for recovery.

> [Federal r]ule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded.... If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the mov-

ant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.* at 182, 83 S.Ct. at 230, 9 L.Ed.2d at 226.

The present case is similar to *Foman* in that, by denying the amendment, the plaintiff is effectively denied any viable theory for recovery. In *Foman*, as here, the amendment did not present a significantly different theory of recovery in the sense that the defendants would be required to start over again in meeting the allegations of the amendment; the facts supporting the new theory were basically the same. The amendment would result in no demonstrable prejudice to the defendants in either case.

Despite the fact that rule 88 involves substantial trial court discretion, it still provides that "leave to amend, including leave to amend to conform to the proof, *shall* be given when justice so requires." (Emphasis added.) On the matter of "justice" as alluded to in rule 88, this case is quite unique. While the defendants were permitted to amend their pleadings to assert ERISA preemption, Davis was denied permission to amend to raise the ERISA theory. Approximately four months remained before trial, the preparation for the defense of the various claims would be virtually the same, and the defendants would apparently suffer no prejudice.

Under these facts, we believe the district court abused its discretion because the decision to deny Davis's amendment was based on clearly untenable grounds, *Ashmead*, 336 N.W.2d at 199, and was done without a valid justifying reason or due consideration of the justice of the result.

*Foman,* 371 U.S. at 182, 83 S.Ct. at 230, 9 L.Ed.2d at 226. Accordingly, we reverse and remand with instructions to enter an order allowing the amendment.

### IV. *Timeliness of Appeal as to Defendant State Farm.*

■ By the time Davis served notice of appeal from the court's dismissal of his suit against Blue Cross and the YMCA, the defendant State Farm had been out of the case for about two and one-half years, the court having dismissed the suit against them under State Farm's motion for summary judgment. Davis did not appeal this ruling within thirty days but waited until his suits against Blue Cross and the YMCA were dismissed and then filed notice of appeal as to all defendants, including State Farm.

State Farm now contends that Davis's appeal of the two-year-old dismissal was untimely. Davis responds that delayed appeals such as this are expressly permitted by Iowa Rule of Appellate Procedure 5(b) when an order disposes of an action as to less than all of the parties. Rule 5(b) provides:

> Notwithstanding [the mandatory thirty-day time for appeal], an order disposing of an action as to fewer than all of the parties to the suit, even if their interests are severable, or finally disposing of fewer than all the issues in the suit, even if the issues are severable, may be appealed within the time for an appeal from the order, judgment, or decree finally disposing of the action as to remaining parties or issues.

Rule 5(b) controls the issue in this case. Dismissal on State Farm's motion for summary judgment could properly be appealed within the time permitted to appeal from the order disposing of the rest of the case. That is what happened here.

### V. *The Summary Judgment Issue.*

■ Blue Cross and State Farm argue that, even if the district court were wrong on the preemption and amendment issues, Davis's case could not survive a summary judgment motion. Blue Cross claims that, as a matter of law, it owed no duty to Davis, Davis had no damages attributable to Blue Cross's coverage of the YMCA, and Davis acquired no conversion rights against Blue Cross. Those arguments, however, presuppose that no agency or fiduciary relationship existed. As discussed later, there is at least a factual issue on that question.

State Farm argues that the court was right in entering the original summary judgment in its favor, because even if the grounds used by the district court were in error, Davis could not prevail. State Farm argues that the basis of Davis's claim against it, that it was liable for the acts of the YMCA director under a theory of agency or cofiduciary relationship, is a theory which is against the weight of authority and unsupported by substantial evidence. On the agency question, it appears a split of authority exists. The general rule appears to be that "neither an employer nor the employer's agent is an agent of an insurance company, or clothed with any power to waive any of the conditions of a group policy of insurance covering the employees of such employer." 44 Am.Jur.2d *Insurance* § 1851, at 844 (1982) (footnote omitted). However, "it has been stated broadly that an employer as the administrator of an employees' group insurance policy is the agent of the insurer, to whom any omission of duty by the employer in its administration of the policy should be attributable." *Id.* at 845 (footnote omitted).

It seems logical that no hard and fast rule should be adopted as to whether agency principles always apply. Questions of agency, authority, and apparent authority necessarily depend on the facts of the case. Moreover, Davis's allegations might have some merit framed in the Iowa Code's definition of "agent" as being "any other person who shall in any manner directly or indirectly transact the insurance business for any insurance company complying with the laws of this state." Iowa Code § 515.124 (1983).

ERISA provides for liability of a fiduciary:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act

or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105 (1988). A determination as to whether a fiduciary relationship exists would, ordinarily, be a fact issue. We conclude that disputed fact issues exist on both the agency and fiduciary relationship questions and that entry of summary judgment would be improper under the circumstances.

We reverse and remand for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.