NEXT GENERATION REALTY, INC., an Iowa Corporation, and Homebuyers Consultants, an Iowa Corporation, Appellants,

v.

IOWA REALTY COMPANY, INC., an Iowa Corporation d/b/a Iowa Realty, First Realty, Ltd., an Iowa Corporation d/b/a First Realty, MidAmerican Energy Holdings Company, an Iowa Corporation, and Des Moines Area Association of Realtors, an Iowa Nonprofit Corporation, Appellees.

No. 03–0470.

Supreme Court of Iowa.

Sept. 1, 2004.

Glenn L. Norris and George F. Davison, Jr. of Hawkins & Norris, P.C.; Christopher T. Cook of Wandro, Lyons & Baer, P.C.; and Dennis C. Schemmel of Schemmel Law Offices, P.C., Des Moines, for appellants.

John D. French and Amy M. Gernon of Faegre & Benson L.L.P., Minneapolis, MN; Mark McCormick of Belin Lamson McCormick Zumbach & Flynn, A P.C., Des Moines; and Kimberly J. Walker and Chad R. Anderson of Faegre & Benson L.L.P., Des Moines, for appellees Iowa Realty Company, Inc., First Realty, Ltd., and MidAmerican Energy Holdings Company.

F. Richard Lyford and Joan M. Fletcher of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellee Des Moines Area Association of Realtors.

## PER CURIAM.

■ This antitrust suit was dismissed on summary judgment,[1] and the plaintiffs have appealed, vigorously contending there are material facts very much in dispute. There is some attraction to this contention because the parties certainly disagree on matters relating to the disputed issues. The dismissal was nevertheless correct because a controlling legal principle in the field of antitrust law renders the disputed issues irrelevant.[2] So we affirm.

Defendants, Iowa Realty Company, Inc. and First Realty (Iowa Realty defendants), are real estate brokerage firms that do business in the Des Moines area. Iowa Realty purchased First Realty in 1995. Now both firms are wholly owned by Home Services of America, Inc., which is wholly owned by MidAmerican Energy Holding Company. Customarily, Des Moines realtors charge a 7% commission for selling previously owned homes: half going to the seller's agent, half to the buyer's.

The Iowa Realty defendants are members of defendant Des Moines Area Association of Realtors (DMAAR). DMAAR is a professional association of real estate agencies that offers members the Multiple Listing Service (MLS). This service pro-

---

1. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Schoff v. Combined Ins. Co.*, 604 N.W.2d 43, 45 (Iowa 1999). *See generally* Iowa R. Civ. P. 1.981.

2. The same dispute was involved in our opinion in *Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178 (Iowa 2001), in which we reversed the granting of the temporary injunction. Following remand, the district court conducted a hearing, reviewed extensive discovery taken following the remand, and made extensive findings, which these plaintiffs urge for our consideration. We, however, find those findings of scant relevance here. The hearing on a temporary injunction is preliminary, and the one here was made irrelevant when we ordered it vacated in the prior decision. Temporary injunctions, by their very nature, are preliminary and thus do not contribute to any determination of facts in dispute. *Econ. Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 648 (Iowa 1995). It would be especially inappropriate to factor the temporary-injunction evidence ruling here. Since it was entered, parties have been added and dropped, and extensive discovery has been undertaken. We base our review on the record made since then.

vides a vehicle for listing and selling residential real estate.

Plaintiff, Next Generation Realty, Inc. (Next Generation), is a real estate broker in the Des Moines area. Although Next Generation was a DMAAR member through 2001, it seldom used the MLS for its clients' listings; Next Generation used the MLS for only 2% of its sales. Instead, Next Generation relied on "office exclusive" listings, which are not accessible to other MLS participants. This was part of Next Generation's business strategy, and it advertised that not using the MLS saved its customers money. Plaintiff Homebuyer's Consultants, which operated only during 1998, offered services to buyers on a negotiated-fee basis. Because it did not represent sellers, it did not contribute a single listing on the MLS.

DMAAR requires that members report office exclusive listings within forty-eight hours of posting. This way all members can obtain accurate information concerning the status of properties, even though other brokers cannot sell office-exclusive listings. In March 2000 DMAAR set its fee for exclusive listings at $35, which covered DMAAR's expenses. Next Generation protested, claiming the fee was highly prejudicial because it dealt almost entirely with exclusive listings.

Next Generation did not report its office-exclusive listings to DMAAR, resulting in delinquent fees totaling $20,160. On September 11, 2001, the DMAAR board voted to suspend Next Generation's MLS privileges until its past-due fees (which by then totaled $36,120) were paid in full. Next Generation did not pay the fees and was expelled.

On October 30, 2001, DMAAR elected its officers and directors for 2002. Iowa Realty agents received enough votes to form a majority of the board, but those elected did not assume their positions until 2002.

Plaintiffs' claims are grounded in two Iowa statutes. Under Iowa Code section 553.4 (2003), they claim Iowa Realty defendants conspired to take control of DMAAR through an unorthodox election and conspired to expel plaintiffs from DMAAR and its MLS. They append an assertion to this claim to allege horizontal price-fixing. The claim under Iowa Code section 553.5 is that defendants engaged in a monopolistic practice by refusing to share MLS real estate commissions with them.

The trial court dismissed the petition on alternative grounds. In affirming the dismissal though, we need consider only one. There was no antitrust injury, and without an antitrust injury, the provisions of Iowa Code chapter 553 do not apply.

**I.** In adopting Iowa Code chapter 553, the legislature left us without authority to innovate from the federal courts' understanding of federal antitrust law. In the preliminary appeal involved in this dispute, we again pointed out that Iowa Code section 553.2 provides that the chapter is to be " 'construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose,' and 'shall be made to achieve uniform application of the state and federal laws prohibiting ... monopolistic practices.'" *Max 100 L.C. v. Iowa Realty Co.,* 621 N.W.2d 178, 182 (2001) (quoting Iowa Code § 553.2).

The authorities we are obliged to follow make it clear that antitrust laws were not intended to deal with claimed wrongs inflicted on individual parties. Their function is only to foster the public's access to a freely competitive market. Antitrust is in place to protect the market, not any individual merchant doing business there. The marketplace is often unfair,

sometimes brutal; sometimes tortious acts take place there. Chapter 553 presupposes all this. But, until an act impacts on the public's access to a competitive market, the injured are left to proceed with traditional tort or contract remedies. Iowa Code chapter 553 simply does not provide a remedy for a private wrong. Cases holding this include *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 486–87 (D.C.Cir.1996); *National Ass'n of Review of Appraisers & Mortgage Underwriters, Inc. v. Appraisal Foundation*, 64 F.3d 1130, 1135 (8th Cir.1995); *Products Liability Insurance Agency, Inc. v. Crum & Forster Insurance Cos.*, 682 F.2d 660, 663–64 (7th Cir.1982).

■ The record here contains no hint that the public was inhibited from access to services of real estate brokers. The proofs are unanimous to the contrary. Iowa Realty's share of the local market decreased from 71.7% in 1996 to 61.5% in 2001, roughly a 10% decline. Next Generation's market share was 2.6% in 1999, and is projected at 6.2% by 2006. There were fifty-one Des Moines real estate agencies in 1996, and the same number in 2001. Of those fifty-one firms in 2001, twenty were recent entrants, after 1996. Plaintiffs' own growth during the period has been remarkable.

In resisting the assertion that the market had been adversely affected by the wrongs plaintiffs assert, the defendants offered an impressive analysis by a highly qualified expert in the field. He supported his opinion with a careful statistical analysis. Although plaintiffs think otherwise, the issue was not joined on the question when plaintiffs offered the anecdotal evidence of one witness, unsupported by any statistical data. She elected not to enter the Des Moines real estate business because of defendants' conduct.

■ **II.** The trial court correctly rejected plaintiffs' price-fixing contention because that contention lacked any support in the record. Although MLS participants typically apply a commission rate of 7%, there is no evidence that the information exchanged through MLS participation causes or induces MLS participants to always charge and subsequently split the 7% commission rate on sold properties. The practice of splitting a 7% commission was established many years ago in the Des Moines business community, and there is no suggestion that the defendants in any way took part in originating the practice or furthering its continuance.

The petition was correctly dismissed.

**AFFIRMED.**

All justices concur except TERNUS and WIGGINS, JJ., who take no part.