# IN THE COURT OF APPEALS OF IOWA

No. 16-1493
Filed May 16, 2018

**RIMAS NEMICKAS, M.D.,**
        Plaintiff-Appellant,

**vs.**

**LINN COUNTY ANESTHESIOLOGISTS, P.C.,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly, Judge.

An anesthesiologist appeals (1) the dismissal of his action alleging his former practice group violated the Iowa Competition Law and (2) the grant of summary judgment on his claims for breach of contract, fraudulent inducement, and tortious interference. **AFFIRMED.**

Michael M. Sellers of Sellers, Galenbeck & Nelson, Des Moines, for appellant.

Mark L. Zaiger and Kerry A. Finley for Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

Heard by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

When Dr. Rimas Nemickas was practicing with Linn County Anesthesiologists, P.C. (LCA), the group entered into exclusive contracts with two Cedar Rapids hospitals. After the practice group terminated his employment contract, Dr. Nemickas sued LCA under Iowa's anti-monopoly statute, Iowa Code section 553.5 (2015). Dr. Nemickas also accused LCA of breach of contract, fraudulent inducement, and tortious interference. The district court granted LCA's motion to dismiss the section 553.5 action, finding the doctor lacked standing to bring a state antitrust claim. The district court issued summary judgment for LCA on the remaining claims. Dr. Nemickas now challenges the district court's rejection of his amended pleadings, the dismissal of his antitrust suit, and the grant of summary judgment. We find no abuse of discretion in the district court's handling of the myriad of amended pleadings filed by Dr. Nemickas. And we find no legal error in the district court's dismissal of the antitrust action or its grant of summary judgment on the contract-related claims. Accordingly, we affirm.

## I. Facts and Prior Proceedings

Dr. Nemickas is a board-certified doctor of medicine and anesthesiology. He joined LCA in 1999 and became a shareholder of the practice in 2005. In 2012, LCA entered into separate contracts with two Cedar Rapids hospitals, Mercy Medical Center and St. Luke's Hospital, to be their exclusive provider of anesthesiology services. Two years later, in July 2014, LCA notified Dr. Nemickas that the officers of the practice would recommend his contract not be renewed as of December 2014. In August 2014, Dr. Nemickas filed a petition at law and

requested a temporary restraining order against LCA's employment action. The petition also alleged a breach of contract by LCA.

The district court restrained LCA from holding its board meeting to consider Dr. Nemickas's employment status until after the parties conducted mediation as spelled out in the employment agreement. In September, the court expanded its injunction, ordering mediation occur within thirty days as set out in amendments to the agreement and that LCA provide Dr. Nemickas with ten days' written notice of the mediation and a list of specific events contributing to its decision not to renew his contract.

LCA provided Dr. Nemickas with notice on October 1 of the grievance committee meeting set for October 14. The practice also provided reasons for its proposed action, a series of complaints dating from 2000 to 2014 "demonstrating a lack of diligence regarding patient care." The list included: "complaints and reports from charge nurses at both Mercy and St. Luke's of a routine failure to review patient charts prior to administering anesthetic," "making social plans on phone while patient moving on table," "several incidents of falling asleep," and "inattentiveness to patients during general anesthesia while talking on phone". LCA also provided reports and complaints dating from 2000 to 2013 reflecting "disruptive and inappropriate conduct" by Dr. Nemickas, including "multiple events centered around explosive personality and inappropriate conversations in front of awake patients and Dr. Nemickas denying having any problem at follow up meeting." LCA summarized: "Based on chronic and recurring issues the Practice did not find Dr. Nemickas's behavior and performance consistent with the

Practice's mission statement." Dr. Nemickas submitted a ten-page response to LCA's concerns to the grievance committee.

After its October 14 meeting, the grievance committee recommended LCA's concerns be considered by all shareholders in December 2014. Some data findings gathered by the grievance committee were sent late to Nemickas, but he received them before the scheduled meeting. Dr. Nemickas filed a request to enjoin any meeting to address his employment status which the district court denied. Dr. Nemickas was not present when the grievance committee presented to the LCA, but was able to make his own presentation and participate in the shareholder vote. After hearing presentations from both sides, twenty-four shareholders voted to issue Dr. Nemickas a ninety-day notice of "voluntary termination"; four opposed the motion and one abstained. On December 12, LCA sent Dr. Nemickas written notice of termination effective March 14, 2015. The doctor filed a fourth request for injunctive relief on March 2, asking the court to set aside LCA's decision to terminate his contract. The court denied the request. On March 14, Dr. Nemickas resigned his position with LCA. Both Mercy and St. Luke's advised Dr. Nemickas that he could not provide anesthesia services because of their exclusive contracts with LCA. But Dr. Nemickas continued to provide anesthesia services at the Surgery Center of Cedar Rapids under his St. Luke's privileges.

In April 2015, Dr. Nemickas filed an amended and substituted petition alleging three counts: breach of contract, fraudulent inducement, and antitrust violations under chapter 553. In May 2015, the court granted leave to amend. In

June 2015, LCA filed a partial motion to dismiss, asserting Dr. Nemickas lacked standing to pursue the state antitrust claim.

During the summer of 2015, Dr. Nemickas tried repeatedly to amend his amended and substituted petition. On July 24, 2015, Dr. Nemickas filed a motion for leave to amend his petition to add a count of tortious interference. The motion also sought to change the caption to assert he was bringing the action "on behalf of himself and consumers of anesthesia services." LCA resisted the proposed amendment, arguing Dr. Nemickas lacked third-party standing to assert the chapter 553 action on behalf of unidentified consumers. In a third motion to amend filed August 12, Dr. Nemickas sought permission to add Mercy and St. Luke's hospitals as defendants in his antitrust action. LCA resisted.

The district court granted LCA's partial motion to dismiss on October 5, 2015. In that same ruling, the court denied Dr. Nemickas's motion to file a second amended and substituted petition. After a series of filings by Dr. Nemickas seeking reconsideration, the district court confirmed the dismissal on December 10. Dr. Nemickas sought interlocutory review of that ruling, which our supreme court denied.

LCA filed a motion for summary judgment in May 2016 with respect to Dr. Nemickas's claims for breach of contract, tortious interference, and fraudulent inducement. The motion noted the court had not granted Dr. Nemickas express permission to amend his petition to include the tortious interference claim but asserted LCA did not resist the motion to amend with respect to that claim. In August 2016, the district court granted LCA's motion for summary judgment in its

entirety and ordered Dr. Nemickas to resign his clinical privileges and to "cease and desist" practicing anesthesia at St. Luke's Hospital. Dr. Nemickas appeals.

## II. Scope and Standards of Review

Dr. Nemickas contends because he requested remedies in equity regarding the antitrust claim, our review should be de novo. *See* Iowa R. App. P. 6.907. LCA disagrees, arguing appellate review of dismissals for lack of standing in antitrust suits is for the correction of legal error. *See Southard v. Visa U.S.A. Inc.*, 743 N.W.2d 192, 194 (Iowa 2007). We agree with LCA. We review the dismissal for errors at law. *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 442 (Iowa 2002). We will affirm "if the petition shows no right of recovery under any state of the facts." *Id.* (citing *Barnes v. State*, 611 N.W.2d 290, 292 (Iowa 2000)). We consider the petition's allegations in the light most favorable to the plaintiff. *Id.*

Dr. Nemickas asks us to review the district court's denial of his motions to amend for the correction of errors at law. LCA argues our review is for abuse of discretion. *See Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 766 (Iowa 2002). ("We afford district courts considerable discretion in ruling on motions for leave to amend pleadings." (citing *Davis v. Ottumwa YMCA*, 438 N.W.2d 10, 14 (Iowa 1989))). LCA is again correct, we will only reverse "when a clear abuse of discretion has been shown." *See Davis*, 438 N.W.2d at 14 (citing *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976)).

The parties agree we review the grant of summary judgment for the correction of legal error. *See Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015).

**III. Analysis**

    **A.     Did the District Court Properly Dismiss the Antitrust Claim?**

Dr. Nemickas based his antitrust claim on section 553.5,[1] known as the anti-monopoly provision, which reads: "A person shall not attempt to establish or establish, maintain, or use a monopoly of trade or commerce in a relevant market for the purpose of excluding competition or of controlling, fixing, or maintaining prices." Section 553.5 is the counterpart to section 2 of the Sherman Act.[2] *See Mueller v. Wellmark, Inc.*, 861 N.W.2d 563, 565 (Iowa 2015).[3] Under Iowa's Competition Law, the definition of "person" includes an "enterprise" which, in turn, includes a professional corporation. Iowa Code § 553.3(2), (4). The law defines "trade or commerce" broadly as "any economic activity involving or relating to any commodity, service, or business activity." *Id.* § 553.3(8); *see Neyens v. Roth*, 326 N.W.2d 294, 297 (Iowa 1982). And to round out the definitions, "'relevant market'

---

[1] In its October 2015 ruling, the district court noted the doctor's amended petition did not specify whether he was advancing a claim under section 553.4 (Restraint prohibited) or 553.5 (Monopoly prohibited) but clarified it was the latter in his partial resistance to LCA's motion to dismiss.

[2] Congress passed the Sherman Act, 15 U.S.C. §§ 1–7, in 1890 to preserve "free and unfettered competition as the rule of trade." *See* Molly Ebraheim, *Antitrust and Hospital Mergers: Uniqueness and Consistency in Market Definition Analysis*, 48 U. Tol. L. Rev. 337, 343 (2017). In 1914, Congress passed additional antitrust laws, including the Clayton Act, 15 U.S.C. § 18, to address certain mergers and acquisitions. *Id.* "Exclusive dealing arrangements that involve commodities may be challenged under either the Sherman Act or the Clayton Act, while those that involve a service or something other than a commodity may be challenged only under the Sherman Act." 54 Am. Jur. 2d Monopolies and Restraints of Trade § 141 (2018) (citing *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island*, 239 F. Supp. 2d 180 (D.R.I. 2003).

[3] *Mueller* rejected a claim under section 553.4, which provides: "A contract, combination, or conspiracy between two or more persons shall not restrain or monopolize trade or commerce in a relevant market." Section 553.4 is the counterpart to section 1 of the Sherman Act. *Id.* at 567–68. Because section 1 applies to concerted action that restrains trade, federal courts have held that it requires two or more defendants. *Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, 833 F.3d 680, 684 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 1582 (2017).

means the geographical area of actual or potential competition in a line of commerce, all or any part of which is within this state." Iowa Code § 553.3(6). Iowa's Competition Law lacks a definition for one significant term—monopoly. Stepping into the void, our supreme court defined that term as "the power to control market prices or exclude competition." *Neyens*, 326 N.W.2d at 297 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966)).

In his April 2015 petition, Dr. Nemickas alleged: "The confidential exclusive anesthesiology services contracts between defendant and each of the hospitals in Cedar Rapids constitute an illegal monopoly." In his July 2015 resistance to LCA's partial motion to dismiss, he alleged the contracts were intended "to establish and maintain a monopoly of anesthesiology services in a relevant market with the purpose of excluding competition and of controlling, fixing or maintaining prices in violation of said law. Iowa Code § 553.5."[4]

---

[4] Because Dr. Nemickas named only LCA in his antitrust action, and was unsuccessful in adding the two Cedar Rapids hospitals as defendants, he is unable to pursue a restraint-of-trade claim. *See* Iowa Code § 553.4 (requiring proof of a "contract, combination, or conspiracy between two or more persons"); *see also Energy Conversion Devices Liquidation Tr.*, 833 F.3d at 684 (interpreting parallel federal provision to require two or more defendants). And we are skeptical that he could obtain relief under his section 553.5 claim—naming LCA as a single monopolist—given his concentration on LCA's exclusive contracts with the hospitals. In similar suits, the excluding party, the hospital or surgical center, is consistently named as a defendant. *See, e.g., Minnesota Ass'n of Nurse Anesthestists v. Unity Hosp.*, 208 F.3d 655, 657 (8th Cir. 2000); *BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n*, 36 F.3d 664, 665 (7th Cir. 1994); *Balaklaw v. Lovell*, 14 F.3d 793, 795 (2d Cir. 1994); *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1407 (9th Cir. 1991); *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1442 (9th Cir. 1988); *Konik v. Champlain Valley Physicians Hosp. Med. Ctr.*, 733 F.2d 1007, 1009 (2d Cir. 1984); *New Mexico Oncology v. Presbyterian Healthcare Services*, 169 F. Supp. 3d 1204, 1205 (D.N.M. 2016); *Korshin v. Benedictine Hospital*, 34 F. Supp. 2d 133, 134 (N.D.N.Y. 1999); *Davies v. Genesis Med. Ctr. Anesthesia & Analgesia, P.C.*, 994 F. Supp. 1078, 1085 (S.D. Iowa 1998); *Leyba v. Renger*, 874 F. Supp. 1229, 1231 (D.N.M. 1994); *Rockland Physician Associates, P.C. v. Grodin*, 616 F. Supp. 945, 947 (S.D.N.Y. 1985); *Belmar v. Cipolla*, 475 A.2d 533, 535 (N.J. 1984). But because we affirm the district court's dismissal on the standing question, we need not decide if Dr. Nemickas otherwise states a claim upon which relief can be granted.

So the question before the district court was whether Dr. Nemickas's allegations that LCA engaged in monopolistic practices, taken as true, stated a claim upon which relief could be granted. In considering LCA's motion, the district court recognized dismissal is not a favored resolution. *See Southard*, 734 N.W.2d at 194 (cautioning if viability of a claim is debatable then it should not be dismissed, but endorsing continued use of motions to dismiss when issue is standing). But the district court reasoned dismissal was proper here because Dr. Nemickas neither alleged a valid antitrust injury nor identified a "genuine market-wide anticompetitive effect" from LCA's exclusive contracts with the two Cedar Rapids hospitals. *See Midwest Comm'n. v. Minnesota Twins, Inc*., 779 F.2d 444, 450 (8th Cir. 1985) (holding if injury alleged is not an "antitrust injury," the plaintiff does not have a claim cognizable under the antitrust laws); *Davies*, 994 F. Supp. at 1101 (advising that to avoid dismissal of complaint, plaintiff asserting an attempt-to-monopolize claim must allege a relevant geographic market).

On appeal, Dr. Nemickas contends the district court leaned too heavily on federal law in deciding the standing question. He cites *Comes*, 646 N.W.2d at 445,[5] for the proposition that the Iowa Competition Law "does not restrict the class of persons who may bring suit." *See* Iowa Code § 553.12. He further argues *Southard* "refined *Comes*" and held "competitors and consumers as participants in the market are proper anticompetition plaintiffs." *See* 734 N.W.2d at 199. Dr.

---

[5] In *Comes*, our supreme court declined to follow federal precedent on whether indirect purchasers had standing to sue under the Iowa Competition Law. *Id.* at 445–49. The *Comes* court did so because: (1) the language of section 553.12 supported indirect purchaser standing; (2) uniformity only requires a uniform standard of conduct under state and federal law, not a uniform rule as to who may sue; and (3) most federal courts allowed indirect purchasers to sue at the time the Iowa Competition Law was enacted in 1976. *See id.*

Nemickas sees *Comes* and *Southard* through rose-colored glasses. A more clear-eyed view of that case law reveals a continued mandate for Iowa courts to follow the "harmonization provision" in section 553.2.[6] *See Comes*, 646 N.W.2d at 446; *see also Southard*, 734 N.W.2d at 196 (clarifying "with respect to setting the outer limits of what injuries are compensable under Iowa's competition law, our decision in *Comes* is narrow"). Accordingly, the district court appropriately looked to federal standing requirements when deciding LCA's motion to dismiss.

Antitrust standing is a more than a search for an injury in fact. *See Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448 (11th Cir. 1991). It is a search for the proper plaintiff to enforce the antitrust laws. *Id.* To determine standing, we examine "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Southard*, 734 N.W.2d at 198 (quoting *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983)). We consider five factors: (1) whether the petition asserts a causal connection between the antitrust violation and the plaintiff's alleged harm; (2) if the injury is the type sought to be redressed by antitrust laws; (3) the directness of the injury; (4) whether failing to provide a remedy would leave a significant antitrust violation undetected or unremedied; and (5) whether the damages claimed are highly speculative or abstract. *Id.* Condensed into a more precise test, "[f]irst, a court should determine whether the plaintiff suffered 'antitrust injury'; second, the court

---

[6] Iowa Code section 553.2 states:
> This chapter shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter. This construction shall not be made in such a way as to constitute a delegation of state authority to the federal government, but shall be made to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices.

should determine whether the plaintiff is an efficient enforcer of the antitrust laws, which requires some analysis of the directness or remoteness of the plaintiff's injury." *Todorov*, 921 F.2d at 1449.

    **1.**    *No antitrust injury.*  Applying the *Southard* test to the facts asserted in Dr. Nemickas's amended petition, we conclude he does not have antitrust standing.  His petition does not allege an antitrust injury.  He complains LCA's exclusive contracts with the two hospitals bar any anesthesiologist who is not a LCA member from enjoying staff privileges.  Dr. Nemickas practiced in Cedar Rapids for several years under the exclusive contracts.  He was only prevented from practicing at the local hospitals after leaving LCA.  His alleged injury, the inability to practice at St. Luke's and Mercy, resulted from his separation from LCA not the exclusive contracts.

    And even considering his current inability to practice at the hospitals without regard to his separation from LCA, Dr. Nemickas does not allege the type of injury protected by antitrust laws.  *See Next Generation Realty, Inc. v. Iowa Realty Co., Inc.*, 686 N.W.2d 206, 208 (Iowa 2004) ("Antitrust is in place to protect the market, not any individual merchant doing business there."); *see also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) ("The antitrust laws protect *competition*, not *competitors*." (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962))).

    Dr. Nemickas asserts in his amended petition that patients in Cedar Rapids "have no availability of any alternative anesthesiology services" except those of LCA, and he alleges LCA "dominates and controls charges and prices" for those services.  But Dr. Nemickas doesn't share whatever hardship patients may suffer

based on LCA's market dominance. His ox is being gored in a different quarter. His personal financial hit—resulting from being let go by a practice that has an exclusive contract with two local hospitals—differs from any injury to the competitive marketplace. *See Scott v. Galusha*, 890 S.W.2d 945, 950 (Tex. App. 1994) ("[A] plaintiff does not have antitrust standing to prosecute an economic injury to himself unless that injury corresponds to an injury of the same type to the relevant market."); *see also In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 57 (S.D.N.Y. 2012) ("The antitrust standing requirement weeds out claims by jilted competitors against firms that legitimately outperform them or choose not to partner with them.").

Iowa's antitrust provisions are "not intended to deal with claimed wrongs inflicted on individual parties. Their function is only to foster the public's access to a freely competitive market." *Next Generation Realty, Inc.*, 686 N.W.2d at 208. The *Next Generation* court rejected the claim of a disgruntled competitor, waxing:

> The marketplace is often unfair, sometimes brutal; sometimes tortious acts take place there. Chapter 553 presupposes all this. But, until an act impacts on the public's access to a competitive market, the injured are left to proceed with traditional tort or contract remedies. Iowa Code chapter 553 simply does not provide a remedy for a private wrong.

*Id.* at 208–09. The district court correctly determined Dr. Nemickas did not allege an antitrust injury as necessary to proceed under chapter 553.

    **2.**     ***Not efficient enforcer.*** Even had Dr. Nemickas alleged an antitrust injury he would be ill-suited to bring an antitrust claim because he is not an efficient enforcer. Medical practitioners denied privileges at one or more hospitals in a geographic area face a difficult task in establishing standing to bring an antitrust

claim. *See, e.g., Davies*, 994 F. Supp. at 1093–96 (finding anesthesiologist did not establish efficient enforcer status). An "efficient enforcer" of antitrust laws is one who can proficiently vindicate the legislative goals. *See Todorov*, 921 F.2d at 1450 (analyzing five factors: (1) the directness or indirectness of the asserted injury; (2) whether there exists an identifiable class of persons motivated to vindicate the public interest in antitrust enforcement; (3) the nature of the damages; (4) the importance of avoiding duplicate recoveries; and (5) whether the plaintiff can enforce an antitrust judgment).

Dr. Nemickas asserts an average consumer is ill-equipped to notice changes in availability, quality, and price of anesthesiology services—making a competitor, like him, better suited to serve as an enforcer. On the contrary, Dr. Nemickas could benefit from LCA's exclusive contracts with the hospitals because consumers may seek out alternative sources for anesthesiology services. *See Davies*, 994 F. Supp. at 1096 (noting if the defendant began charging more for anesthesiology services or providing lower quality care then consumers will seek out alternative care with other facilities or physicians). And if the exclusive contracts do result in higher prices and a lower level of care "these effects will not be missed by patient-consumers or insurers." *See Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 719 (7th Cir. 2006).

Dr. Nemickas failed to allege an antitrust injury and would not be an efficient enforcer of such claim.[7] Because Iowa antitrust statute is guided by federal law,

---

[7] Because we conclude the district court properly dismissed the petition on these standing grounds, we need not reach the question whether Dr. Nemickas correctly identified the relevant anesthesiology market as the two hospitals in Cedar Rapids.

we are not inclined to diverge from a well-established body of federal precedent rejecting antitrust standing for claims by physicians challenging exclusive contracts. *See, e.g.*, *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 31 (1984) (abrogated on other grounds by *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006)); *Balaklaw*, 14 F.3d at 797; *Konik*, 733 F.2d at 1015; *Korshin*, 34 F. Supp. 2d at 138; *Davies*, 994 F. Supp. at 1096. Any expansion of antitrust standing is best left to our supreme court. *See Rosauer Corp. v. Sapp Dev., L.L.C.*, 856 N.W.2d 906, 907 (Iowa 2014) (finding appropriate for court of appeals to defer to supreme court on whether to extend reach of "implied warranty of workmanlike construction").

**B.      Did the District Court Abuse its Discretion by Denying Attempts by Dr. Nemickas to Amend His Petition?**

Dr. Nemickas next argues he was "given no opportunity to remedy or substantiate his petition." At issue is (1) a motion for leave to amend petition filed July 24, 2015; (2) an amendment to the motion for leave to amend petition filed August 12, 2015; and (3) a motion for extension of time filed October 14, 2015, to "plead over" in accordance with *Nesper Sign & Neon Co. v. Nugent,* 168 N.W.2d 805 (Iowa 1969). In its appellee's brief, LCA interprets these motions as Dr. Nemickas's efforts to advance three purposes: (1) add a tortious interference claim[8]; (2) add the two hospitals as antitrust defendants; and (3) "bolster his allegations that he had suffered an antitrust injury, primarily by seeking to claim

---

[8] LCA did not resist addition of the tortious interference claim. The district court addressed the merits of that claim, as does LCA on appeal. Accordingly, we reach the merits of this claim later in this opinion.

that he was prosecuting the antitrust claims on behalf of not only himself, but unidentified 'consumers.'"

We first address the district court's refusal to accept the amendments filed on July 24 and August 12. In reviewing the district court's exercise of discretion, we start with the language of the applicable rule:

> A party may amend a pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is required and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise, a party may amend a pleading only by leave of court or by written consent of the adverse party. Leave to amend, including leave to amend to conform to the proof, shall be freely given when justice so requires.

Iowa R. Civ. P. 1.402(4). As a matter of practice, district courts should permit amendments and treat denials as the exception. *Baker v. City of Iowa City*, 867 N.W.2d 44, 51 (Iowa 2015). And "[t]he district court should allow amendments so long as the amendment does not substantially change the issues in the case*." Id.* Even amendments substantially changing the issues are permissible so long as the defendant is "not prejudiced or unfairly surprised." *Id.*

Here, the district court rejected the doctor's motion to add the hospitals as parties because it determined Dr. Nemickas lacked standing and dismissed the chapter 553 claim leaving no surviving claim relevant to the hospitals. That rejection was not an abuse of discretion because the amendment would not have altered the outcome of the suit. The same rationale supports Dr. Nemickas's belated attempts to bolster his allegations concerning the antitrust injury by claiming he brought suit on behalf of consumers. The district court did not abuse its discretion in denying Dr. Nemickas's request to amend his pleadings.

Dr. Nemickas also complains he was denied permission to "plead over" to correct deficiencies in his petition under Iowa Rule of Civil Procedure 1.444.[9] The district court correctly concluded Dr. Nemickas could not rely on the "pleading over" language in rule 1.444 and its interpretation in *Nesper Sign*. In *Nesper Sign*, the plaintiff misnamed the defendant, Nugent, as an individual rather than a corporation, but otherwise filed a legitimate cause of action. 168 N.W.2d at 806–07. In the present case, Dr. Nemickas did not misidentify a defendant through inadvertent error. Rather, he identified LCA as the sole defendant and failed to name either hospital as a defendant in his original amended petition. In concluding Dr. Nemickas was not an efficient enforcer of Iowa's antitrust law, the district court did not require or permit further pleading. Accordingly, rule 1.444 did not apply. *See Hubbard v. Marsh*, 32 N.W.2d 67, 68 (Iowa 1948).

---

[9] Iowa Rule of Civil Procedure 1.444 states:

> If a party is required or permitted to plead further by an order or ruling, the clerk shall forthwith mail or deliver notice of such order or ruling to the attorneys of record. Unless otherwise provided by order or ruling, such party shall file such further pleading within ten days after such mailing or delivery; and if such party fails to do so within such time, the party thereby elects to stand on the record theretofore made. On such election, the ruling shall be deemed a final adjudication in the trial court without further judgment or order; reserving only such issues, if any, which remain undisposed of by such ruling and election.

**C.    Did the District Court Properly Grant Summary Judgment on the Remaining Claims?**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Iowa R. Civ. P. 1.981(3).  We view the summary-judgment "record in the light most favorable to the nonmoving party and will grant that party all reasonable inferences that we can draw from the record."  *See Estate of Gray ex rel. Gray v. Baldi*, 880 N.W.2d 451, 455 (Iowa 2016) (quoting *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 806 N.W.2d 282, 286 (Iowa 2011)).  As the moving party, LCA must prove the facts are undisputed.  *See Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717 (Iowa 2001).  And "[e]ven when the facts are undisputed, summary judgment is inappropriate if reasonable minds could draw different inferences from those facts."  *Frontier Leasing Corp. v. Links Eng'g, LLC*, 781 N.W.2d 772, 775–76 (Iowa 2010) (quoting *Colonial Baking Co. of Des Moines v. Dowie*, 330 N.W.2d 279, 282 (Iowa 1983)).  The district court must not reach credibility determinations in granting summary judgment; assessments of what evidence to believe are left to the trier of fact.  *See id.* at 776.

1.    **Breach of Contract**

"A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract."  *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Magnusson Agency v. Pub. Entity Nat'l Co.*, 560 N.W.2d 20, 27 (Iowa 1997)).  To show LCA breached the employment contract, Dr. Nemickas was required to satisfy five elements: (1) a contract existed; (2) its terms and conditions were established; (3)

he performed those required terms and conditions; (4) LCA breached the contract in a particular way; and (5) Dr. Nemickas suffered damages as a result of the breach. *See id.*

Dr. Nemickas insists the employee handbook and LCA's bylaws served as contracts between him and LCA. He further claims LCA breached contractual guarantees by not conducting a proper peer-review procedure. He also contends he did not have a chance to address all of the allegations against him.

As an initial matter, the district court decided the handbook was not a binding contract. The handbook explicitly stated "these documents are not a contract of employment and that my employment relationship with [LCA] is voluntary and subject to the terms of my Employment Contract," and Dr. Nemickas signed his name below this disclaimer. We agree with the district court that the handbook was specific in avoiding the creation of a contract. *See Vick v. Heatilator, Inc.*, 537 N.W.2d 810, 812 (Iowa Ct. App. 1995).

Next, the district court decided LCA complied with the peer-review and grievance procedures set out in its bylaws. That process allowed Dr. Nemickas to counter the allegations against him in writing and at the grievance committee and shareholder meetings. Dr. Nemickas presented a ten-page response, spoke with the grievance committee, presented to the shareholders and participated in the shareholder vote. The district court found Dr. Nemickas was afforded due process and LCA met each requirement set out in the bylaws. Accordingly, the court decided the doctor had not presented a genuine issue of material fact as to any breach of the employment contract by LCA. We find no error in the court's conclusion.

**2.  Fraudulent Inducement/Misrepresentation/Good Faith & Fair Dealing**

Dr. Nemickas next asserts LCA misled the shareholders in connection with his termination in violation of an implied duty of good and fair dealing.  Specifically, he claims LCA purported to share negative results from a peer review when no true peer review was conducted; LCA inaccurately alleged his conduct threatened its contracts with the hospitals; LCA alleged he had a high number of "no-requests" from doctors who work with the group's anesthesiologists when he had no opportunity to determine the veracity of that data; LCA would waive the non-compete clause in Dr. Nemickas's employment contract; and "putative concerns raised by LCA as required by court order were a pretext to other positive pressures being exerted from outside the group."  On appeal, Dr. Nemickas argues Iowa courts should recognize an implied duty of good faith and fair dealing in all contracts.

To prove LCA engaged in fraudulent representation or inducement, Dr. Nemickas was required to show the following elements: (1) LCA made a representation; (2) that proved to be false; (3) the representation was material; (4) LCA did so with scienter; (5) LCA intended to deceive the shareholders; (6) the shareholders relied on the misrepresentation; and (7) Dr. Nemickas suffered damages as a result.  *See Whalen v. Connelly*, 545 N.W.2d 284, 294 (Iowa 1996).

The district court determined Dr. Nemickas had not met his "burden of production as to any of the elements of a claim of fraudulent inducement to generate a viable jury question."  We agree with the district court's determination. Dr. Nemickas failed to present baseline facts from which a jury could find LCA made false representations to the shareholders with an intent to deceive them.

Rather, the grievance committee presented reports of Dr. Nemickas's misconduct that it gathered in response to a court order obtained by the doctor. Moreover, as LCA points out on appeal, the practice group did not need a "pretext" to fire Dr. Nemickas; the employment contract allowed for voluntary termination for any reason or no reason upon ninety days' notice, which Dr. Nemickas received.

On the issue of an implied duty of good faith and fair dealing, Dr. Nemickas acknowledges our supreme court has not applied the doctrine to employment contracts. *See, e.g., Fogel v. Trustees of Iowa Coll.*, 446 N.W.2d 451, 456 (Iowa 1989); *see also Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 282 (Iowa 1995) ("We have consistently rejected recognition of a covenant of good faith and fair dealing."). But Dr. Nemickas contends his contract with LCA included this implied duty and that LCA had "an even higher duty" to him because its shareholders were fiduciaries. Dr. Nemickas is asking to expand the application of this doctrine beyond the existing Iowa precedent. We believe any such an expansion would be better left to our supreme court. *See Rosauer*, 856 N.W.2d at 907.

**3.    Tortious Interference**

In his final claim, Dr. Nemickas seeks damages based on LCA's alleged interference with his existing and prospective business contracts—the interference, according to Dr. Nemickas, is LCA's act of maintaining exclusive contracts that allow only LCA anesthesiologists to provide services at the two Cedar Rapids hospitals.

To prove LCA's tortious interference with Dr. Nemickas's *existing* contractual relationships he must show: (1) an *existing* valid contractual

relationship or business expectancy; (2) knowledge of this by the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damages. *Locksley v. Anesthesiologists of Cedar Rapids, P.C.*, 333 N.W.2d 451, 457 (Iowa 1983). Similarly, to prove tortious interference with a *prospective* contractual relationship Dr. Nemickas must show: (1) a *prospective* contractual or business relationship; (2) that LCA knew of the prospective relationship; (3) LCA intentionally and improperly interfered with the relationship; (4) LCA's interference caused the relationship to fail to materialize; and (5) resulting damages. *See Iowa Coal Min. Co. v. Monroe Cty.*, 555 N.W.2d 418, 438 (Iowa 1996). And interference with a prospective contract requires Dr. Nemickas to show LCA's sole or predominant reason for interfering was to financially injure or destroy him. *See Tredrea v. Anesthesia & Analgesia, P.C.*, 584 N.W.2d 276, 283 (Iowa 1998).

The district court concluded Dr. Nemickas failed to demonstrate that a reasonable jury could find LCA entered into the exclusive contracts with the sole or predominant purpose of interfering with Dr. Nemickas's business relationships with patients and physicians at the two hospitals. The district court continued: "In fact, Dr. Nemickas consented to and benefited from these contracts." We find no error in the district court's conclusion.

We recognize Dr. Nemickas, as the nonmoving party, "is entitled to all reasonable inferences in a motion for summary judgment." *See Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 246 (Iowa 2006). But "the requirement to identify specific facts in response to a summary judgment motion includes the requirement to identify those facts that support the inference sought to be drawn."

*Id.* Dr. Nemickas did not meet that requirement on any of the summary judgment claims.

## IV. Conclusion

To recap, the district court properly dismissed Dr. Nemickas's section 553.5 claim because he lacked antitrust standing. The court did not abuse its discretion by denying the doctor's numerous motions to amend. And the court properly granted summary judgment on the remaining claims.

**AFFIRMED.**